AVERILL and another *against* HEDGE.

On the 29th of *February*, A, residing at *Hartford*, in this state, enquired, by letter, of *B*, residing at *Wareham*, in *Massachusetts*, upon what terms *B* would supply *A* with a quantity of iron of certain descriptions. On the 2d of *March*, B replied, specifying the terms on which he would furnish the articles in question. On the 14th, *A* wrote to *B* on other business, but took no notice of *B's* offer. On the 16th, *B* replied; and at the close of his letter, enquired of *A*, whether he accepted *B's* proposal regarding the iron. This letter arrived at *Hartford*, on the 18th, about 2 o'clock, *P. M.* In a letter dated the 19th, but not put into the post-office until the 20th, *A* accepted *B's* proposal. No direct mail to *Wareham* going out on the 20th, which was *Sunday*, the letter was not actually sent until the morning of the 21st; and it reached *B*, with another letter from *A*, dated the 21st, on the 23d; previous to which, *B* had otherwise disposed of the iron, and could not comply with *A's* order. On the 19th there was a direct mail to *Wareham*, leaving *Hartford* between 5 and 6 o'clock, *A. M.* by which a letter would reach *Wareham* the next day. In *assumpsit* brought by *A* against *B* for the iron, it was held, 1. that the proposal of *B* in his letter of the 2nd of *March*, was renewed by his letter of the 16th; 2. that in order to render *B's* proposal binding on him, it was incumbent on *A* to accept it, within a reasonable time; 3. that the time of acceptance was not when *A's* letter was written, but when it was sent, or put into the post-office, beyond his controul; 4. that a letter of acceptance, written by *A* on the 19th, put into the post-office at *Hartford*, on the 20th, conveyed from *Hartford* by mail, on the 21st, and received by *B* at *Wareham*, on the 23rd, was not an acceptance within a reasonable time; consequently, *A* was not entitled to recover.

THIS was an action of *assumpsit*, alleging that the defendant, who conducted business at *Wareham, Mass.* under the name of the "*Wareham Iron Company*," promised to deliver to the plaintiffs a quantity of rods, shapes and band iron, in *March*, 1836.

The cause was tried, at *Hartford, February* term, 1838, before *Williams*, Ch. J.

The plaintiffs claimed to have proved their case, by a correspondence between the parties in the year 1836; particularly, by a letter from the plaintiffs to the defendant, dated the 29th of *February*; the defendant's answer of the 2nd of *March*; a letter from the plaintiffs, dated the 14th of *March*; and the answer of the defendant, also dated the 14th of *March*, by mistake, in fact written the 16th of *March*; and the plaintiffs' reply thereto, dated the 19th of *March*. The whole cor-

respondence between the parties was read in evidence; the substance of which was as follows :

Hartford,
June, 1838.

Averill
v.
Hedge.

"*Hartford,* 29th *February,* 1836. Dear sir,—Regarding the future disposal of your nails as settled, it would be improper to importune you further on that point. Perhaps, however, you will not object to sending us a supply of rods and shapes for our *Spring* sales. Please to say on what terms you will send us 10 or 15 tons, assorted, by first packet in the *Spring.* We shall also be glad to purchase our hollow ware of you on the same terms as heretofore. Shall be pleased to hear from you soon." [Signed, " *J. & H. Averill,*" the plaintiffs ; and addressed to *John Thomas,* Esq.]

" *Wareham,* 2nd *March,* 1836. On the writer's return from the *South,* last evening, he found your favour of the 29th *ult.* to which we now reply. We will deliver to you, in *Hartford,* 10 or 15 tons of rods, shapes and band iron as follows : say      shapes and band iron, at $110 per gross ton, 6 months, and old sable rods, at $116, 6 months. Old sable iron is now quick at $110 *per* ton, in *Boston ;* and there is but very little iron there, at any price. We will deliver you at *Hartford,* a common assortment of hollow ware, at $28 *per* ton, six months." [Signed " *Washington Iron Co.* per *John Thomas,* Agent ;" and addressed to the plaintiffs.]

" *Hartford,* 14 *March,* 1836. Dear Sir, We have bought of *Ripley & Averill* their stock of hollow ware, with the understanding that we were to receive the benefit of their orders given you last *July.* The balance of this order, we believe was in readiness last *Fall ;* but owing to the early closing of our navigation, was not shipped. Will you ship us this lot of ware, by first packet, on terms then agreed on, with *R. & A. ?* Please advise us by return mail, if we may expect it." [Signed by the plaintiffs, and addressed to *John Thomas,* Esq.]

" *Wareham, March* 16 1836. Dear Sirs, Your favour of the 14th *inst.* is at hand, and contents noted. We shall most cheerfully comply with your request to ship to you the balance of *Ripley & Averill's* order for hardware, not filled in consequence of the early frost last *Autumn ;* such being the understanding between yourselves and Mr. *Ripley.* We learn from our neighbours, engaged in the manufacture of this article, that they now hold it at $30 *per* ton, and shall not sell it at a less price through the season ; and consequently, we shall

*Hartford,*
*June, 1838.*

Averill
*v.*
Hedge.

not consider ourselves holden to the offer made you on the 2nd inst., unless you signify your acceptance thereof, by return mail;—but shall furnish the balance of *Ripley & Averill's* order in conformity with the contracts made with them.

" Do you accept of our proposal for supplying you with rods, shapes and band iron ; and if so, what quantity of each shall we send you ?" [Signed " *Washington Iron Co.* per *John Thomas,* Agent ; and addressed to the plaintiffs.]

" *Hartford, March* 19th, 1836. Dear Sir, Your favour of the 17th came to hand, last evening, too late to be answered before this morning. We note and duly appreciate your prompt assent to send us the balance of *R. & A.'s* order for hollow ware, at old prices. In our future purchases of that article, we will buy of you at $28 *per* ton, six months, as offered in your favour of the 2d. We will also take ·the following shapes, &c. on your terms there given : 160 bundles of new sable or *Swedes,* different shapes, specified ; also 40 bundles smaller shapes, to be of old sable, assorted ; 120 bundles band iron, assorted ; 60 bundles half inch spike rods ; 200 bundles P S I horse nail rods, or a ton, if convenient, in 28 *lb.* bundles, sending 5 tons in all." [Signed by the plaintiffs, and addressed to *John Thomas,* Esq.]

In a letter dated *March* 21st, 1836, addressed to *J. Thomas,* Esq. the plaintiffs alter their order for band iron, varying the sorts.

" *Wareham, April* 2d, 1836. Your favours of the 19th and 21st reached here, in the absence of the writer. We regret that you had not sooner signified your acceptance of our proposition of the 2nd of *March,* touching supplies of shapes, band iron, &c., as we had, prior to the reception of your favours above alluded to, entered into such engagements in other markets as rendered it impossible for us to supply you with those articles, on any terms." [Signed " *Washington Iron Co.* per *John Thomas,* Agent; and addressed to the plaintiffs.]

On the 6th of *April,* 1836, the plaintiffs addressed a letter to the defendant's agent, remonstrating against his conduct in refusing to send them the iron ordered. The defendant's agent replied, by a letter, dated the 8th of *April,* as follows :

" On 29th *February,* you ask our terms for 10 or 15 tons of rods and shapes. On 2nd *March,* we give them to you per mail. On 14th *March,* you again address us upon another

*Hartford,*
June, 1838.
_____
Averill
*v.*
Hedge.

subject; but although our proposition, in ordinary course of mail, must have been in your hands 10 or 12 days, yet no allusion was made to it. On 16th, after replying to yours of 14th, we ask if you accede to our proposition of the 2nd. After this we waited for your reply until the 22nd, when not having heard from you, we made such other arrangements as made it impossible for us to fill your orders of 19th or 21st, both which came together in the same mail on 23d. We did not intend the question proposed to you in ours of 16th, as a renewal of our proposals of the 2nd *ult.,* nor do we believe that it will bear that construction ; but nevertheless, we should have filled your order had it been seasonably received."

This correspondence was conducted through the mail ; upon the part of the defendant, by his avowed agent, *John Thomas,* and by the plaintiffs themselves, on their part. The plaintiffs resided in the city of *Hartford,* near the post-office.

The letter written by the defendant, on the 16th of *March,* dated the 14th, arrived at *Hartford,* on the 18th of *March,* about 2 o'clock, P. M. The plaintiffs' answer to the letter, dated the 19th of *March,* was post-marked the 20th ; and the letter written by the plaintiffs on the 21st of *March,* was post-marked on the day of its date ;—and both letters arrived at *Wareham,* at the same time, *viz.* on the 23d of *March.*

The plaintiffs claimed, that during said month of *March,* the price of the article which was the subject of controversy, was constantly advancing in the market, and that they had sustained loss in their business, by the non-compliance of the defendant with his contract.

The defendant introduced a witness to prove, that letters mailed at *Hartford* for *Wareham,* were, by the usual course of mail, sent by *Providence,* and would reach that place, on the evening of the day after leaving *Hartford,*—but might be sent by *Boston ;* although when sent by *Boston,* on the days that both mails went, a letter would be one day longer in reaching *Wareham ;*—that a mail was sent every day from *Hartford* to *Boston,* and every day but *Sunday,* from *Hartford* to *Providence ;*—that the *Providence* mail usually left the post-office in *Hartford* about 5 o'clock, every morning, except *Sunday,* when no mail was sent, and *Monday,* when it left about 10 o'clock, A. M. The mails were in the course of business, closed one hour before they left the office. Upon the 14th of *March,* 1836, the *Providence* mail left the office at 25 minutes

past 5 o'clock in the morning, and on the 21st, at 6 minutes past ten in the morning. The 20th was *Sunday ;* and letters put into the office on *Saturday* evening, and on *Sunday* evening, would be forwarded by the same mail. The usual course of business at the post-office in *Hartford,* was, to stamp or post-mark all letters, not on the day they were forwarded, but the day they were received into the office,—unless received after 9 o'clock in the evening, when they were post-marked as of the succeeding day.

Upon the facts so proved and disclosed in the correspondence, the plaintiffs claimed, that the proposal of the defendant, in his letter of the 2nd of *March,* to furnish the plaintiffs with rods, shapes, and band iron, was renewed, by his letter written 16th of *March* and dated 14th ; and that the plaintiffs, by their answer of the 19th of *March,* in due time, signified their assent to the proposal therein contained ; and thus was the contract stated in the declaration completed.

These claims of the plaintiffs were all resisted and denied, by the defendant.

The court charged the jury, that in mercantile transactions of this character, affected, as they must be, by the constant fluctuations of markets, the utmost promptitude must be exacted consistent with a due regard to ordinary business; and that if the letter written by the plaintiffs, accepting the proposal of the defendant relative to said rods, bands, &c. was not delivered into the post-office in *Hartford,* before the day it was post-marked, *viz.* the 20th of *March,* it was not sent in such reasonable time as to make their acceptance obligatory upon the defendant.

A verdict was thereupon returned for the defendant ; and the plaintiffs moved for a new trial.

*Hungerford,* in support of the motion, contended, That by the plaintiffs' letter of the 19th of *March,* accepting the offer of the defendant, the contract was closed, and rendered binding upon the parties. In the first place, the plaintiffs were not bound to reply to this offer, by return mail. The defendant had himself placed his proposals regarding hollow ware and iron upon different grounds. As to the former, it was a condition of the offer, that the plaintiffs should signify their acceptance, by return mail ; but as to the latter, it was left open

to be replied to in a reasonable time. *Johnson* & al. v. *King*, 2 *Bing.* 270. This was, evidently, the understanding of the parties. Secondly, the plaintiffs' letter of the 19th of *March* was in reasonable time. The plaintiffs' letter of acceptance was put into the post-office in season to go by the next regular mail after the return mail. The regular mail from *Hartford* to *Wareham*, is by *Providence*. The defendant's letter of the 16th being received on *Friday*, the 18th, the return mail was on *Saturday*, the 19th. The *next mail after* the return mail, was on *Monday*, the 21st; there being no *Providence* mail on *Sunday ;* and the plaintiffs' letter of the 19th, was put into the post-office in season to go by *Monday's* mail. Thirdly, the plaintiffs had no advantage over the defendant in respect to any fluctuation in the market; for the defendant could revoke his offer, at any time before it was accepted by the plaintiffs.

*T. C. Perkins*, contra, contended, 1. That the defendant had expressly limited his offer to a reply by return mail, with respect to the iron, as well as the hollow ware. The original application of the plaintiffs, in their letter of the 29th of *February*, was for iron and hollow ware. The defendant, in his reply of the 2nd of *March*, gives terms for iron and hollow ware ; and in his letter of the 16th, calls the attention of the plaintiffs to both these subjects; and in the same letter, says, he shall not consider himself bound by the offer made on the 2nd, unless the plaintiffs signify their acceptance by return mail. *Eliason* v. *Henshaw*, 4 *Wheat.* 225.

2. That aside from any express condition, the plaintiffs were bound to communicate their acceptance by return mail, if practicable. Here they had abundant time for this purpose, *viz.* all the afternoon and evening of the 18th. In oral negotiations, the answer must be immediate—*i. e.* during the interview—or it will not bind. If it were not so, the contract would be all on one side : the owner would be tied up from selling, while the applicant was not bound to buy ; and the latter might wait for changes in the market, of which the former could not have the benefit. This inconvenience and damage would be cast on the owner, without any consideration received. A negotiation by correspondence, stands on the same ground. The party to whom an offer is made, is bound to

decide upon it, as soon as it reaches him, and if he assents, to notify the other party immediately. *Mactier's* admr's. v. *Frith,* 6 *Wend.* 103. 114. 122. 131.

3. That it is not necessary, in order to vindicate the charge, to claim that the plaintiffs should have replied by the first mail practicable. The charge allowed them, for this purpose, not only the afternoon and evening of the 18th, but nearly the whole of the 19th. The question, therefore, is, whether the plaintiffs could hold back their answer until the 20th, watching the fluctuations in the market, and then bind the defendant by their acceptance. It is said, the plaintiffs did communicate their answer by the first regular mail after the return mail. The first answer to this is, that a letter put into the post-office on the 19th, might have gone by the *Boston* mail, on the 20th, (*Sunday,*) and have reached *Wareham* sooner, than by the *Providence* mail of *Monday.* But secondly, this point does not depend solely on the time when the letter would *arrive,* but also, and principally, upon the time when the plaintiffs *accepted* the offer, by putting their letter of acceptance into the post-office, thereby precluding themselves from further speculations on the markets. If this was not done, either on the day they received the defendant's letter, or on the day after, it was not done in a reasonable time.

BISSELL, J. From the correspondence between these parties, and which is made a part of the case, it appears, that on the 29th of *February,* 1836, the plaintiffs enquired of the defendant, upon what terms he would supply them with ten or fifteen tons of rods, shapes and band iron. To this communication, the defendant replied, on the 2nd of *March,* specifying the terms on which he would furnish the articles in question. On the 14th, the plaintiffs wrote to the defendant, on other business; but took no notice of his offer. The defendant replied, on the 16th; and at the close of his letter, he enquires of the plaintiffs, whether they accept his proposal regarding the rods, shapes and bands. This letter, it appears, arrived at *Hartford,* on the 18th, about two o'clock afternoon. The plaintiffs accept the defendant's proposals, in a letter dated on the 19th, but which the jury have found, was not delivered into the post-office, at *Hartford,* until the 20th; and the 20th being *Sunday,* and no mail leaving *Hartford* on that day,

the letter was not actually sent until the morning of the 21st. And it further appears, that this letter, and also another from the plaintiffs, dated the 21st, reached the defendant on the 23rd. It also appears, that the defendant having waited for the plaintiffs' answer until the 22nd, and having heard nothing from them, then made such arrangements, as rendered it impossible for him to comply with their order. It is further found, that on the 19th of *March*, the *Providence* mail left the office at *Hartford*, at 25 minutes past 5 o'clock; and that a letter forwarded by that mail, would have reached the defendant on the evening of the following day.

*Hartford,*
June, 1838.
———
Averill
*v.*
Hedge.

The great question in the case, is, whether upon these facts, there has been such an acceptance of the defendant's offer, as that he is bound by it.

The jury were instructed, that if the letter written by the plaintiffs, accepting the proposal of the defendant, was not delivered into the post-office at *Hartford* until the 20th of *March*, it was not sent in such reasonable time, as to make their acceptance obligatory on the defendant.

Several questions, not immediately growing out of the charge, but which, if decided in favour of the defendant, make an end of the case, have been much discussed at the bar.

1. It has been contended, that the proposal of the defendant, in his letter of the 2nd, was not renewed, by his letter of the 16th of *March*. Upon this point no opinion was given, by the Judge on the circuit, unless an opinion may be inferred from the ground on which he rested the case in his instructions to the jury. Nor is it essential that a decided opinion on the question should be expressed by this court; because there are other grounds on which we are unanimously of opinion that the ruling of the Judge below must we sustained.

Were this, however, a turning point in the case, we should probably be prepared to say, that the defendant's letter of the 16th of *March*, does contain a distinct renewal of his former proposal. His language is certainly very strong to show, that such was his intention. He says: "*Do you accept of our proposal for supplying you with rods, shapes and band iron; and if so, what quantity of each shall we send you?*" Now, we cannot but think, that the fair and obvious construction of this language, is, that the defendant then stood ready to supply the articles upon the terms already specified. And such appears

*Hartford,*
*June, 1838.*

*Averill*
*v.*
*Hedge.*

to have been his own view of the case, as is manifest from his subsequent letter of the 8th of *April.*

2. It has been urged, that admitting this letter to contain a renewal of the former proposal, yet *by the terms of it,* the plaintiffs were bound to signify their acceptance, by return of mail. The question, in this aspect of it, is manifestly independent of any mercantile usage. That the defendant had a right to attach this condition to his offer, is undeniable. The question is, whether he has done so; and whether such is the true construction of his letter.

In his letter of the 2nd of *March,* the defendant had offered to supply the plaintiffs an assortment of hollow ware, at certain prices; and in regard to this offer, in his letter of the 16th, he says: "We shall not consider ourselves holden to the offer made you, on the 2nd inst. unless you signify your acceptance thereof, by return of mail;" and he then puts the enquiry with regard to the rods, shapes and band iron, that has been already mentioned. Now, it should be borne in mind, that the defendant's proposal in regard to these articles, had already been before the plaintiffs for at least ten or twelve days; and one claim put forth by them, on the trial, was, that during the month of *March,* the price of these articles was constantly advancing in the market. The question then arises, whether under these circumstances, it was the intention of the defendant to give them further time; and, whether such intention can be fairly inferred from the language of his communication. In regard to the hollow ware, there can be no question. The plaintiffs were positively required to signify their acceptance by return mail. And when, in the same letter, and under similar circumstances, they are also required to decide upon the proposal in regard to the rods, &c. it is certainly not easy to see, why the defendant should have made, or should have intended to make, a distinction between these classes of articles. Had the judge directed the jury that the defendant was not bound, unless the plaintiffs signified their acceptance by return of mail, we are by no means satisfied, that the direction would have been wrong. As, however, he placed the case on grounds more favourable to the plaintiffs' claim, a decision upon this point is unnecessary. Any further discussion of it is, therefore, waived.

3. We come, then, to the enquiry, whether the instruction

*Hartford,*
June, 1838.

Averill
*v.*
Hedge.

actually given to the jury is correct in point of law. And here it may be remarked, that it is very immaterial when the letter of the plaintiff *was written:* until *sent* it was entirely in their power and under their controul; and was no more an accept-ance of the defendant's offer, than a bare determination, lock-ed up in their own bosoms, and uncommunicated, would have been. And it surely will not be claimed, that mere volitions, a mere determination to accept a proposal, constituted a contract. The plaintiffs, then, did *not accept* the defendant's proposition, until the 20th, and for aught that appears, until the evening of that day. That they were bound to accept, within a reasona-ble time, was distinctly admitted in the argument; and if not admitted, the position is undeniable. The case of the plain-tiffs, then, comes to this, and this is the precise ground of their claim: That they had a right to hold the defendant's offer under advisement for more than 48 hours, and to await the arrival of three mails from *New-York*, advising them of the state of the commodity in the market; and having then deter-mined to accept, the defendant was bound by his offer; and that this constitutes a valid mercantile contract. Now, in re-gard to such a claim, we can only say, that it appears to us to be in the highest degree unreasonable; and that we know of no principle, of no authority, from which it derives the slight-est support

Indeed, it seems to us to be subversive of the whole law of contracts. For, it is most obvious, that if, during the interval, the defendant was bound by his offer, there was an entire want of mutuality: the one party was bound, while the other was not. Had the proposition been made at a personal inter-view between the parties, there can be no pretence, that it would have bound the defendant beyond the termination of the interview. The case of *Cooke* v. *Oxley*, 3 *Term Rep.* 653. is decisive on this point, and goes much further. There *A* having proposed to sell goods to *B,* gave him, at his request, a certain time to determine whether he would buy them or not; and it was held, that although *B* determined within the time, *A* was not bound. And Lord *Kenyon* there says: " Nothing can be clearer than at the time of entering into this contract, the engagement was all on one side; the other party was not bound; it was, therefore, *nudum pactum.*" So also in the case of *Payne* v. *Cave*, 3 *Term Rep.* 148. it was deci-

ded, that the bidder at an auction, under the usual conditions that the highest bidder shall be the purchaser, may retract his bidding at any time before the hammer is down.

Now, it is most manifest, that if the principle of these cases is to be applied to, and govern the present, they are entirely decisive of it in favour of the defendant. It is however claimed, and perhaps justly, that the case of *Cooke* v. *Oxley* has been disregarded, if not overruled, by the more modern decisions—or at least, that it has been holden not to apply to mercantile contracts, negotiated through the medium of the post-office. Thus, in the case of *Adams* v. *Lindsell,* 1 *B. & A.* 681. there was an offer to sell goods on certain specified terms, provided an acceptance of the offer was signified by return of mail. This was done; and it was held, (the defendant not having retracted his offer in the mean time,) that the contract was complete. It is not easy to reconcile this decision with that of *Cooke* v. *Oxley,* unless it can be distinguished, on the ground, that as the offer was made through the mail, the party is to be considered as repeating the offer at every moment until the other party has had an opportunity of manifesting his acceptance. And this seems to have been the ground on which the case was placed, by the court of *King's Bench.* They say : " If the defendants were not bound, by their offer, when accepted by the plaintiffs, till the answer was received, then the plaintiffs ought not to be bound till after they had received the notification that the defendant had received their answer and was bound by it ; and so it might go on *ad infinitum.* The defendants must be considered in law, as making, during every instant of time their letter was travelling, the same identical offer to the plaintiffs ; *and then* the contract is completed, by the acceptance of it by the latter."

These positions are questioned, if not directly controverted, by *Best,* C. J. in the case of *Routledge* v. *Grant,* 4 *Bing.* 653. He says : " If they are to be considered as making the offer till it is accepted, the other may say, ' Make no further offer, because I shall not accept it ;' and to place them on an equal footing, the party who offers should have the power of retracting, as well as the other of rejecting ; therefore, I cannot bring myself to admit, that a man is bound when he says, ' I will sell you goods on certain terms, receiving your answer in course of post.'" He does not, however, profess to overrule the

case of *Adams* v. *Lindsell ;* nor was it necessary ; as there were other grounds on which the rule in *Routledge* v. *Grant,* was discharged.

In the case of *McCullock* v. *The Eagle Insurance Company,* 1 *Pick.* 281. decided by the supreme court of *Massachusetts,* the case of *Cooke* v. *Oxley* is cited with approbation and followed.   And the decision there cannot easily be reconciled to the doctrines advanced in *Adams* v. *Lindsell.* For it was there held, that an offer to insure the plaintiff's vessel, at a given premium, communicated by mail, and promptly accepted, was not binding on the defendants, they having, in the mean time, written a letter retracting their offer.   This decision proceeded upon the ground that the treaty was open until the plaintiff's letter, notifying his acceptance, *was received ;* and that, in the mean time, the defendants have a right to withdraw their offer.   *Parker,* C. J., in giving the opinion of the court, said : " The offer did not bind the plaintiff, until it was accepted ; and it could not be accepted, *to the knowledge of the defendants,* until the letter announcing the acceptance was received, or at most, until the regular time for its arrival by mail had elapsed."

The case of *Adams* v. *Lindsell* is regarded as an authority, and followed, by the supreme court of errors of the state of *New-York,* in *Mactier* v. *Frith,* 6 *Wend.* 103.   And there the doctrine is asserted, that the acceptance of an offer, made through the medium of a letter, binds the bargain, if the party making the offer has not, in the mean time, revoked it.   And the rule adopted in *Massachusetts,* that regards the contract as incomplete, until the party making the offer is notified of the acceptance, is rejected.   The doctrine of *Adams* v. *Lindsell* and of *Mactier* v. *Frith,* may, perhaps, be considered as receiving the implied sanction of the supreme court of the *United States,* in the case of *Eliason* v. *Henshaw,* 4 *Wheat.* 225.; although a decision upon the precise point was unnecessary ; the offer there not having been accepted according to the terms on which it was made.

We do not feel that the task is imposed upon us of reconciling these conflicting authorities, if indeed they do conflict; for within the principle of none of them can the claim of the plaintiffs be established.

In *Mactier* v. *Frith,* which goes as far as any of the cases

*Hartford,*
*June, 1838.*

Averill
*v.*
Hedge.

on this subject, the rule is laid down, that the offer continues until the letter containing it is received, *and the party has had a fair opportunity to answer it.*" And it is further said, that a letter written would not be an acceptance, so long as it remained in the possession or under the controul of the writer.    An offer, then, made through a letter, is not continued beyond the time that the party has a "*fair opportunity*" to answer it.    This is substantially the doctrine of the charge. And it is not only highly reasonable, but is supported by all the analogies of the law.    Once establish the principle that a party, to whom an offer is made, may hold it under consideration, more than 48 hours, watching, in the mean time, the fluctuations of the market, and then bind the other party, by his acceptance, and it is believed that you create a shock throughout the commercial community, utterly destructive of all mercantile confidence.    No offers would be made by letter. It would be unsafe to make them.

It is only necessary to apply these principles to the case before us ; and their application is exceedingly obvious.    The proposal of the defendant, which had already been several days before the plaintiffs, was renewed, early on the afternoon of the 18th.    They show no act done by them, signifying their acceptance, until the evening of the 20th.    Was this within a reasonable time ?    Was this the first fair opportunity of manifesting their acceptance ?    We think this can hardly be claimed.    Had the defendant had an agent in *Hartford,* through whom the offer was made, might the plaintiffs thus have delayed the communication of their acceptance to him ?    This will not be pretended.    And can it vary the principle, that the offer, instead of being thus made, was made through the agency of the post-office ?    Had the offer of the defendant been promptly accepted, information of the acceptance would have reached the defendant, on the evening of the 20th, in due course of mail.    He waited until the 22nd ; and hearing nothing from the plaintiffs, he then virtually retracted his offer, by making such arrangements as made it impossible for him to fill their order.    We think he was fully justified in so doing ; and that upon every sound principle, the rule in this case must be discharged.

In this opinion the other Judges concurred.

New trial not to be granted.