EDMUND A. WILMOT AND WIFE vs. THE CHARTER OAK LIFE
INSURANCE COMPANY.

A life insurance policy-holder gave a note at three months, May 21st, for a half
  year's premium then due, the agent of the company giving him a receipt
  stating that it was "for renewal of the policy." By the terms of the policy
  it was to lapse if the premium was not paid when due. Held that the note
  and receipt did not operate to renew the policy for a period beyond the
  maturity of the note, and that, if it was not then paid, the policy lapsed.

The next premium fell due November 21st. The note given May 21st was
  renewed by another due October 27th. This note not being paid the company
  notified the policy-holder that they had canceled his policy, the latter claiming
  that they had no right to do so. In a suit by the policy-holder against the
  company for damages for breach of the contract, the company claimed that,
  if they had no right to cancel it, it remained in force until the plaintiff had
  accepted the cancellation, which was not done until after the premium of
  November 21st became due; and that, as that premium was not paid, the
  policy then lapsed. The judge instructed the jury that if they should find
  that the company wrongfully cancelled the policy, then they were to determine
  whether the plaintiff notified the company of his acceptance of it within a
  reasonable time; and that if the notice was not given until after November
  21st, yet if they found there was no unreasonable delay, the policy did not
  lapse by non payment of the November premium. Held that the question of
  what was a reasonable time was here so much a question of law, that the court
  erred in submitting it to the jury without any limitation.

The plaintiff's counsel called at the office of the company, but not finding the
  secretary in left with a clerk a statement of his claim to be communicated to
  the secretary, and requested that the latter reply by letter. Held that the
  defendants were not entitled to prove the reply made by the secretary to the
  clerk when the latter informed him of the claim made by the plaintiff, since,
  even if the clerk was the agent of the plaintiff to deliver the message he was
  not his agent to receive the answer, which was to be by letter.

ASSUMPSIT for a breach of contract in wrongfully cancelling
a policy of life insurance issued by the defendants in favor of
the plaintiffs; brought to the Court of Common Pleas in New
Haven County, and tried to the jury, on the general issue
with notice, before *Stoddard, J.*

The insurance was upon the joint lives of the plaintiffs,
Edmund A. Wilmot and Cynthia J. Wilmot his wife, for the
sum of $2,000 payable to the survivor on the death of either,
upon an annual premium of $120.08 to be paid as follows: a
note of $60 to be given and $30.04 to be paid in cash on the

21st day of May in each year, and $30.04 to be paid in cash on the 21st day of November in each year—the note to be on interest and payable in twelve months from its date. The policy was dated May 21st, 1867. By the terms of the policy all the rights of the insured were to be forfeited by non-payment of the premium when due.

A few days before May 21st, 1877, Mr. Wilmot, who had always before paid his premiums to a local agent of the defendants at Naugatuck, went to their principal office at Hartford, to see the managers of the company; and he there signed and gave to F. A. Hart, general agent of the defendants for the state of Connecticut, a note for $53.80, dated May 21st, 1877, payable to the order of F. A. Hart, general agent, three months from date, with interest, at the Waterbury National Bank, and received a receipt for it, signed by Hart as general agent, stating the note to be "for renewal of policy No. 25,949," which was the number of the plaintiffs' policy. Hart took this note, after consultation with the proper officers of the company, and by their direction. At the same time Mr. Wilmot gave the defendants his premium note for $60. At this time, and at the time of the trial, the defendants held other premium notes signed by Mr. Wilmot, amounting in all to $336, which were introduced in evidence at the trial by the defendants under their plea and notice. The sum of $53.80 was made up by adding the $30.04 cash premium to $23.76 interest on these premium notes.

A few days before the note of $53.80 became due, Mr. Wilmot went again to Hartford and arranged with the proper officers of the company to take it up, by a renewal note for the same amount, payable two months after date with interest. He thereupon signed and gave the defendants such a renewal note, and the old note was soon afterwards returned to him by mail. The renewal note was sent by the defendants to their local agent at Naugatuck for collection a few days before it matured. The plaintiffs had requested that it should be sent to this agent, instead of being left at the bank where it was payable. This note has never been paid, nor any part of it, but is still held by the defendants.

On November 1st, 1877, at six in the afternoon, the follow-ing letter was mailed to Mr. Wilmot from the assistant secre-tary of the company, Mr. Squire:—"Office of the Charter Oak Life Insurance Co., Hartford, Conn., Nov. 1, 1877.  Mr. E. A. Wilmot, Naugatuck, Conn.  *Dear Sir:* Yours of the 29th ult. is at hand, and in reply would say that you are mis-taken in your understanding of the matter of payment of your note.  We said that we would send the note to agent Waterbury for collection, but that we could give no further extension of time.  The note has been returned to us as not paid, and we have canceled your policy No. 25,949.  We cannot give a paid-up policy for it. . Yours truly, W. L. Squire, As. Sec."  Mr. Wilmot received this letter, and replied on November 14th by the following letter, addressed to the president of the company, and which was received in due course of mail:—"Naugatuck, Nov. 14, 1877.  Mr. Jewell, *Sir:* A letter from your department informs me that my policy No. 25,949 insuring the life of E. A. Wilmot and C. J. Wilmot has been canceled.  Will you be so good as to inform me by return mail what right they have to cancel my policy, when I have a receipt to the 21st of November. Edmund A. Wilmot."

No further payment was made or tendered by the plaintiffs to the defendants of any premium due or which might be claimed as due on November 21st, 1877.

The plaintiffs claimed, and the defendants denied, that at the time when the first $53.80 note was given in May, 1877, Mr. Wilmot was told by Hart, the general agent, that the receipt of May 21st, 1877, renewed the policy for six months from that date, whether the note was paid or not, and that the note was accepted as the equivalent of a cash payment.

On the trial of the cause the plaintiffs offered evidence to prove, and claimed to have proved, that, at the time the pre-mium note for $60 and the note for $53.80 were given, Mr. Wilmot went to the office of the company in Hartford to ascertain its financial condition, and was told by the officers of the company that it might go into the hands of a receiver, and that he could not find out its true condition, and that

Hart agreed to accept the note for $53.80 in payment of the cash part of the premium due May 21st, 1877, and the interest on premium notes, and that he was assured by Hart that the giving of the note was the same as if he had paid the cash, and that he said he wanted no catches, if anything should happen that he did not pay the note when due, and was assured by Hart that it was the same as if he paid the money down; and that he then took the receipt and went home. Also that a few days before the note of $53.80 became due, he again went to the office of the company in Hartford, and could not satisfy himself as to the condition of the company, and that he then gave and the company accepted a new note for the old note, payable in sixty days, and agreed to send him the old note, which they did. The defendants denied that there was any promise to accept the note of $53.80 as cash and as a renewal of the policy for six months. The plaintiffs also claimed, and Mr. Wilmot testified, that a little while before the second note became due, he went again to the office of the company in Hartford, and then Mr. Squire, the assistant secretary, gave him two scaling papers, and wanted him to take them home and have his wife sign one and he sign the other; that he wanted time to think it over, and that the company agreed with him that he might take them home, and have to the time the next premium fell due, November 21st, 1877, to make up his mind whether he would pay the note and sign the scaling papers, or return the papers unsigned, and the company return the notes and take up the policy. The defendants admitted giving him the scaling papers, and the renewal note, but denied the agreement which Mr. Wilmot stated.

The defendants claimed that this action did not lie on the above conceded facts, and that, even if their cancellation were a wrongful one, it would not justify such an action, as the plaintiffs never notified the company of their assent to it.

The plaintiffs claimed, and offered evidence to prove, that they lived some three miles from the post-office in Naugatuck, and that after Mr. Wilmot, who was a farmer, received the letter of November 1st, from the company, telling him that

Wilmot *v.* Charter Oak Life Ins. Co.

the plaintiffs' policy was canceled, he did not know what to do, and that finally, on the 14th of November, 1877, he wrote the letter to the president of the company, to obtain the information therein requested, and that at the last interview with the defendants' secretary in Hartford, when he took the scaling papers, he told the secretary, in answer to his inquiries, that his wife was in feeble health, (which was the fact;) and that after he had waited a few days for a reply from the company, and received none, he went to Waterbury, and consulted with an attorney, and in consequence of what he said he consulted the present attorney of the plaintiffs, and after such consultation, on the 20th of November, 1877, the plaintiffs' attorney went to the home office of the company in Hartford, to demand the return of the premiums and money paid to the company by the plaintiffs under the policy, on the ground that the policy had been wrongfully canceled, and that finding none of the principal officers of the company in, and being assured that the company had no regular attorney, he requested Mr. Dustin, a clerk, to state to the officers of the company that he had called, as attorney of the plaintiffs, to make such demand, and requested a reply by mail. The clerk made a memorandum and read it to the attorney, and said he would lay it before the proper officers on their return. The defendants claimed that this interview took place November 23d or 24th.

The plaintiffs claimed also that on the 26th or 27th of November the plaintiffs' attorney received a letter from Mr. Squire, who was now the secretary of the company, in which he said:—"We do not quite understand from Mr. Dustin's memorandum, the nature of the claim made under policy No. 25,949. We find that semi-annual premium, due May 21st last, was paid by cash note, that the note matured, and some extension was granted, and that the note is still in our hands and unpaid. We also find that the premium due the 21st inst. is unpaid, and the policy lapsed. It does not appear therefore that Mr. Wilmot has any equitable claim under the policy, which is forfeitable. Fifty per cent. of the premiums upon the policy have been paid in premium notes." This letter is

dated the 24th of November, but was mailed the 26th. The memorandum made by Mr. Dustin was as follows:—" E. A. Wilmot and wife, Naugatuck, demand, through T. E. Doolittle, Esq., counsel, all premiums paid under policy 25,949, dated May 21st, 1867. Premium due in April last, not paid in cash, but note given for same. Note not paid and policy canceled. Wilmot claims that note paid premium, and non-payment of note *does not* forfeit policy. The taking of the note was a waiver of right to insist upon forfeiture. If not settled by company on terms considered equitable by Wilmot, a suit will be brought." To Mr. Squire's letter the attorney wrote and mailed the following reply on the 27th of November: " In reply to your favor of yesterday, the point is that before the premium became due on the 21st instant, you canceled policy No. 25,949, and as you repudiated the contract at a time when you had no right so to do, we claim to recover back the money paid." To this Mr. Squire replied on the 28th of November as follows:—"Your favor of yesterday is received. Inasmuch as the policy to which you refer has lapsed, on account of the non-payment of the premium due the 21st inst., it does not seem to us that any claim under the policy can be sustained." This closed the correspondence, and the present suit was soon after brought.

The defendants put Dustin upon the stand, and asked him to state what he did in pursuance of the request of the plaintiffs' attorney. He replied that he stated to Mr. Squire, as soon as the latter came in, the claim and demand of the attorney. He was then asked what reply, if any, Mr. Squire made. The defendants claimed that it would appear that Mr. Squire said that there was nothing in the claim, as the policy had lapsed for non-payment, not only of the May but of the November premium; also that Dustin acted as the plaintiffs' agent in making this demand. This the plaintiffs denied, and claimed that he was the defendants' agent and the sole person in charge of the office at the time. Mr. Dustin had nothing to do with the policies of the company, but was employed to collect the interest on their investments. To the above question the plaintiffs objected, and the court excluded it, the defendants duly excepting.

Wilmot v. Charter Oak Life Ins. Co.

The defendants presented a written request for sundry instructions to the jury. Three of these were substantially given, and the others are as follows:

1st. The receipt dated May 21st, 1877, by Hart, as general agent, for the $53.80 note, and of the renewal note for the same amount, did not operate to renew the plaintiffs' policy beyond October 27th, 1877, unless the note was paid on that day. The plaintiffs claim that the company verbally agreed with Mr. Wilmot that the note, if not paid on October 27th, should be held by Waterbury, the company's agent at Naugatuck, for a time, until the plaintiffs should make up their minds whether to pay it or let their policy lapse. The defendants deny that there was any such agreement; but, even if there was, it was void as against the company for want of any consideration.

2d. The failure to pay the premium due on November 21st, 1877, forfeited the policy.

3d. If the cancellation of the policy by the company, declared in the letter of November 1st, was justifiable, the verdict must be for the defendants. If not justifiable, the policy remained in force up to November 21st, 1877, when the next premium fell due, notwithstanding such attempted cancellation, unless the plaintiffs, before that day, assented to the cancellation. If they did not assent to it, and notify the company of such assent, on receiving the letter of November 1st, 1877, or within a reasonable time thereafter, and before November 21st, then the policy remained in force on November 21st, and upon that day became forfeited for non-payment of the new premium due on that day.

4th. Where a company wrongfully breaks its contract of insurance, and the insured sue for money had and received, the rule of damages would be to compute the difference between what it would cost the plaintiffs to get a new policy on the life of the one dying first, taken out November 1st, 1877, and the value, on that day, of the premiums which would have been payable under the old policy, under its terms, if it had remained in force; using the rates of mortality and of interest commonly used by the defendants. An actuary

produced by the defendants has testified that he has made this computation, and has found that this difference is $150.07; and that against this balance the defendants are entitled to a set-off for the premium notes, which they hold, of $336. If the jury believe this witness to have testified correctly, therefore, the value of the plaintiffs' policy on November 1st, 1877, was nothing at all, and they could only recover nominal damages, if they were entitled to a verdict.

The defendants also claimed, and asked the court to charge the jury, that the present action did not lie, even conceding all that the plaintiffs claimed to be true, because no promise on the part of the defendants to repay the premiums, or otherwise pay the surrender value of the policy, had been expressly made, or could be implied in law; also that not only was there no sufficient evidence of any assent by the plaintiffs to the rescission of the contract, prior to bringing suit, but that there was no allegation in their declaration of any such assent.

The court charged the jury, as to the matters contained in these requests, as follows:

" If the premium due May 21st, 1877, has not been paid, and the company have not waived the payment, the defendants had the right to cancel the policy on November 1st, and no recovery can be had against them. The defendants claim that the premium has not been paid, and that they did not waive the payment; that they only took a note of Mr. Wilmot, and extended the time of payment of the premium; and that he did not pay his note at maturity, that is, at the time agreed upon between the parties, in which the defendants agreed to wait for the payment of the premiums; and that therefore the plaintiffs have not kept their contract to pay the May premium, and that the defendants could legally cancel the policy. If you find this to be the case, I think the company could legally cancel the policy, and the plaintiffs cannot recover.

" The plaintiffs, on the other hand, claim to have fulfilled their contract by giving the note, which was accepted by the defendants as payment, and that the policy was renewed and

kept alive up to November 21st, 1877; and that the defendants violated the contract when they canceled the policy on the 1st of November, 1877. The plaintiffs do not claim that they paid the May premium in cash, but that they gave a note for the same, which was accepted by the defendants as payment. The simple fact that the plaintiffs gave a note for this premium is not payment. It must have been received by the defendants as payment. Without such an agreement by the company, the notes operated merely to extend the time for paying the cash premium and the cash interest due on the old premium notes until their maturity; and, if not paid at maturity, did not relieve the policy from forfeiture for nonpayment of the cash premium due May 21st, 1877.

"The plaintiffs claim that the note was received and accepted as payment by the defendants, and that the receipt given for the note proves that it was so accepted. Mr. Wilmot testifies to conversation with the company's officers in which they agreed to so accept the notes, and to give him until November 21st, to decide whether to pay his notes or not, and he offers in evidence certain papers given him by the company, relating to scaling his policy, and testifies that he had the right to hold the papers, and wait until November 21st, to decide which course he would pursue; and that the company agreed to keep his policy alive until that time. This the company deny, and the officers of the company testify to the contract as they understand it. You will take this testimony into consideration, and, if you find that such notes were given and accepted as payment for the May 21st premium, and that the company agreed to keep the policy alive until November 21st, 1877, then the defendants had no right to cancel the policy on the 1st of November.

"If the defendants canceled the policy when it was in force, the plaintiffs have a right to treat the contract of insurance as rescinded, and can recover back the cash premiums paid, if demand was made in a reasonable time.

"If the jury find that when Wilmot gave his note for $60 and for $53.80, he was told by the general agent that such payment was the same as if the premium, then due for the

same amount, was paid in cash, whether the note was paid or not, then the company was estopped from claiming a forfeiture, and this policy was in force when the defendants canceled the same, and the same was improperly canceled by the defendants. If you find the cancellation by the company was justified, your verdict must be for the defendants.

"The defendants claim that, if they wrongfully canceled the policy, it remained in force until the plaintiffs accepted the cancellation; and that, as they did not accept the cancellation until after November 21st, as they claim, therefore the policy lapsed by non-payment of the November 21st premium. Should you find that the defendants wrongfully canceled the policy on the 1st of November you will then determine whether Wilmot notified the company within a reasonable time under all the circumstances; and, if you find that the plaintiffs did not notify the company until after November 21st, and that there was no unreasonable delay, the policy did not lapse by non-payment of the November 21st premium. But, if you find that the plaintiffs did not notify the defendants until after November 21st, and that the delay was unreasonable, then the policy did lapse by non-payment of the November 21st premium, and your verdict should be for the defendants.

"If you find the issue for the plaintiffs, your rule of damages should be the amount of all the money which the plaintiffs have paid under it for premiums and interest."

The jury returned a verdict for the plaintiffs for $704.08 and costs. The defendants moved for a new trial for error in the charge of the court.

*S. E. Baldwin*, in support of the motion.

*T. E. Doolittle* and *W. L. Bennett*, contra.

LOOMIS, J. The policy of insurance in question was issued May 21st, 1867, on the joint lives of the plaintiffs, payable to the survivor on the death of either. The annual premium was $120.08, of which $30.04 was to be paid in cash on the 21st days of May and November in each year, and the remain-

ing $60 by note dated May 21st and payable one year from date. The premiums had been regularly paid up to November 21st, 1876, inclusive.

For the cash payment of $30.04 due May 21st, 1877, and the interest on the outstanding notes ($23.76,) amounting in all to $53.80, Mr. Wilmot, one of the plaintiffs, gave his note for three months, and thereupon the defendants gave a receipt to the plaintiffs as for a renewal of the policy. At the same time the defendants took the usual premium for $60. The $53.80 note was afterwards renewed by a two months note for the same amount, which fell due October 27th, 1877, and was not paid.

Afterwards, on the 1st day of November, 1877, the defendants notified Mr. Wilmot that the note had been returned unpaid, and that they had canceled the policy. On the 14th day of November, he replied by letter, inquiring what right the company had to cancel the policy when he had a receipt to the 21st of November.

Subsequently the plaintiffs' attorney called at the office of the defendants and demanded the return of all the premiums paid by the plaintiffs on the policy. The date of this demand was a disputed question of fact on the trial, the plaintiffs claiming that it was the 20th of November, and the defendants claiming, and offering evidence tending to prove, that it was either the 23d or the 24th of November.

The present action having been brought in the life-time of the insured and in advance of the time specified in the policy for the performance of the contract on the part of the defendants, two things are indispensable requisites for its maintenance:—

1st. That the policy was wrongfully rescinded by the defendants, and

2d. That the plaintiffs so assented to the rescission as to give a present right of action.

The first proposition depended upon the questions whether the note of May 21st, 1877, and the renewal note due October 27th, 1877, were received by the defendants as payment of the premium of May 21st, and whether the facts showed an

agreement on the part of the defendants with the plaintiffs to keep the policy alive until November 21st, 1877, which would be a waiver of the right to claim a forfeiture prior to that time.

We think the charge of the court covering these points, based upon the claims of the parties as to the evidence, was substantially correct, and is sustained by the authorities: *Insurance Co.* v. *Norton*, 96 U. S. Reps., 234; *Insurance Co.* v. *Eggleston*, 96 U. S. Reps., 572; *Sheldon* v. *Conn. Mut. Life Ins. Co.*, 25 Conn., 207.

In relation to the second proposition, as to the plaintiffs' assent to the rescission, we think the charge as given was erroneous.

There was no pretence of any election on the part of the plaintiffs to treat the policy as rescinded prior to the time when their counsel called at the office of the defendants. If it was conceded that this occurred, as the plaintiffs claimed, on the 20th of November, there would be nothing in the charge to furnish ground for a new trial. But the motion shows that there was evidence strongly tending to show that it was on the 23d or 24th of November, and the jury might have so found. If so it would have been ascertained that before the plaintiffs assented to any rescission, another premium, that of November 21st, 1877, had become due, for which no payment or tender had been made and no waiver was claimed. If this fact had any legal significance as bearing on the time within which the plaintiffs' election was to be made, it should have been recognized by the court, but it was treated as of no importance.

The defendants requested the court to charge the jury that "if the cancellation by the company of the plaintiffs' policy, declared in the letter of November 1st, 1877, was justifiable, the verdict must be for the defendants. If not justifiable, the policy remained in force up to November 21st, 1877, when the next premium fell due, notwithstanding such attempted cancellation, unless the plaintiffs before that day assented to the cancellation. If they did not assent to it, and notify the company of such assent, on receiving the letter of November

1st, 1877, or within a reasonable time thereafter, and before November 21st, then the policy remained in force on November 21st, and upon that day became forfeited for non-payment of the new premium due on that day, and the verdict should be for the defendants.

The court not only failed to comply with this request, but gave a direct charge to the contrary, "that if you find that the plaintiffs did not notify the company until after November 21st, and that there was no unreasonable delay, the policy did not lapse by non-payment of the November 21st premium."

In many matters the question of reasonable time would be within the exclusive province of the jury. But in *Averill* v. *Hedge*, 12 Conn., 424, where there was a proposal to sell to another certain goods, the reasonable time within which such proposal must be accepted to make it a binding contract was assumed to be a question of law for the court to decide. Now contracts of life insurance are surely of no less importance than ordinary mercantile contracts, and under the peculiar circumstances of this case we think the question, what was a reasonable time in which to assent to the cancellation of the policy, ought not to have been left to the jury without any limitation at all.

In *Howland* v. *Continental Life Ins. Co.*, 121 Mass., 499, this question was assumed to be and was decided as a mere question of law, and that too in a case where no additional premium had become due between the date of the attempted cancellation and the plaintiffs' notice. But in the case at bar the last mentioned fact exists and introduces a legal element which we think should control the question of reasonable time.

Assuming that the defendants had no right to cancel the policy on the 1st of November for the non-payment of the May premium, the policy remained a continuing contract in full force and vigor until the plaintiffs elected to treat it as rescinded. *Day* v. *Conn. General Life Ins. Co.*, 45 Conn., 480. If either of the plaintiffs had died before they had given notice to the defendants of their election, the company

would have been liable for the amount of the insurance as on a policy in full force.

The claim of the plaintiffs in answer to the alleged forfeiture for the non-payment of the May premium, was in substance, that the defendants had agreed to extend the time until November 21st, but no longer. The defendants until notice from the plaintiffs had the *locus penitentiæ* and might have waived even a good ground for the forfeiture of the policy. It seems to us unreasonable to allow the plaintiffs to delay notice of their election to treat the policy as at an end, not only until after the additional premium due November 21st had become payable, but even after the deferred premium of May 21st for which the forfeiture had been declared had also become due according to the plaintiffs' own showing, when there was ample opportunity for the plaintiffs to communicate with the defendants on the subject prior to that time. We conclude therefore that the instructions asked for by the defendants on this point were correct in law and ought to have been given to the jury.

The motion also presents a question of evidence—whether the defendants, upon the facts as stated in the record, were entitled to the reply which Squire, as an officer of the defendant company, made to Dustin, when the latter communicated the message and demand from the plaintiffs' counsel. The grounds on which its admissibility was claimed by the defendants were, that in making the communication Dustin was the agent of the counsel and not of the company, and that the reply of Squire was part of the *res gestæ*.

We think this claim might be well founded if it did not appear that the counsel, at the same time that he authorized Dustin to deliver his message, particularly requested that the reply should be by mail; which would seem to exclude any further agency on the part of Dustin after he had delivered the message as requested.

The counsel for the defendants argues that this reply of Squire would have been very important in fixing the date of the demand, which as we have seen was a material fact. But Squire's mere declaration as to the date would have been

hearsay evidence and inadmissible unless it was part of the *res gestæ.* Another way to fix the date was open to the defendants. Dustin it seems testified that he communicated the message from the counsel immediately upon the return of Squire the same day, and the latter it would seem stood ready to testify that thereupon he had his attention distinctly called to the date and to the fact that the additional premium for November 21st was then past due.

As the point on which a new trial is advised may finally dispose of the case, we leave the question as to the rule of damages an open one for future consideration.

A new trial is advised.

In this opinion the other judges concurred; (Judge SANFORD of the Superior Court sitting in the place of Judge CARPENTER, who was disqualified by interest.)