[No. 4494.]

THE ORPHAN BELLE MINING & MILLING COMPANY v.
THE PINTO MINING COMPANY ET AL.

1. Mines and Mining—Leases—Duties of Lessee.

It is the duty of a lessee of a mining claim, in general, to determine the underground lines of the premises held under the lease.

2. Same—Trespass—Lessee—Lessor—Instigation.

Where, during mining operations by the lessee of a mining claim, the general manager of the lessee asks the lessor's manager for a survey, a statement made by the latter that the lessee should not go too far over the end line, but that a few feet would not make any difference, as the lessor's manager would make an arrangement concerning the lines with the president of the plaintiff, the owner of the adjoining claim, did not amount to either an instigation or request by the lessor corporation to the lessee to commit a trespass on such adjoining claim.

3. Same—Mining Corporation—Trespass—Manager—Scope of Authority.

It is not within the scope of the general authority of a manager of a mining corporation to instigate or request a trespass to be committed by the lessee of his corporation, so as to make such trespass an act of the corporation and thereby make it liable as a willful trespasser.

*Appeal from the District Court of El Paso County.
Hon. Louis W. Cunningham, Judge.*

Mr. WILLIAM C. ROBINSON, Messrs. SPURGEON & CASSIDY, and Mr. TYSON S. DINES, for appellant.

Mr. EDWARD C. STIMSON (Mr. CHARLES CAVENDER, Mr. A. H. MARTIN, and Mr. CURTIS NYE SMITH, of counsel), for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

The Free Coinage Gold Mining Company, the owner of the Rising Sun and Pinto mining claims in the Cripple Creek District, leased a portion thereof to the Pinto Mining Company.

The Orphan Belle M. & M. Company, owner of the Orphan No. 2 and the Ida Belle No. 1 and the Ida Belle No. 2 mining claims, by a lease in writing and under seal, leased a portion of such claims to certain parties residents of Herrington, Kansas, who organized and incorporated under the laws of Kansas, The Herrington M. & M. Company, and assigned their lease to said company. This lease described the leased premises as follows:

"The south seventy-five (75) feet of the Orphan (No. 2) number two mining claim, and the south seventy-five (75) feet of the Ida Belle (No. 1) number one claim. This ground being a portion of survey No. 8149, Cripple Creek Mining District, El Paso county, state of Colorado. Also a block of ground, situated on the Ida Belle (No. 2) number two, immediately adjoining on the west 75 feet by 100 feet, making in all a block of ground 382 feet by 75 feet."

The premises covered by the two leases adjoined each other, the northerly end line of the Free Coinage Company's property being the southerly end line of the Orphan Belle Company's property.

The Free Coinage Company, owner, and the Pinto Company, lessee, as plaintiffs, prosecuted this action against the Orphan Belle Company, to recover the value of ore alleged to have been taken from the plaintiffs' premises by the Herrington Company, lessee of the Orphan Belle Company, at the instigation and request of the Orphan Belle Company, and for the mutual profit and advantage of lessor and lessee. The Herrington Company, lessee, was not made a party defendant to the suit.

The portion of the amended complaint charging the trespass is as follows:

"That the defendant's said lessees, at the instigation and request of the defendant, and acting in conjunction therewith, and for the mutual profit and

advantage of said lessees and said defendant, and by means of a certain shaft upon the said adjacent land, and of levels, drifts, cross-cuts and stopes, and between the first day of December, 1897, and the 30th day of March, 1898, penetrated into and upon the lands, premises, mines and mining claims aforementioned. * * * and by means of said underground workings then and there wilfully, wrongfully, knowingly and unlawfully, and without license or consent of these plaintiffs or either of them, * * * extracted therefrom, and converted to their own use and benefit large quantities of gold-bearing quartz or rock of great value, and plaintiffs further aver that the said lessees, between the 1st day of December, 1897, and the 30th day of March, 1898, at the instigation and request of, and in conjunction with the said defendant, and for the mutual profit, gain and advantage of themselves and the said defendant as aforesaid, have extracted, taken out and carried away two hundred and forty-four tons of ore and gold-bearing rock or quartz from the veins, lodes and ledges aforesaid, which ores and gold-bearing rock or quartz was then and there of the reasonable value of seventeen thousand and eighty ($17,080.00) dollars.''

Trial to a jury resulted in a verdict and judgment in favor of plaintiffs in the sum of $8,450.00, to reverse which is this appeal.

The evidence established, that during the time included in this controversy the Orphan Belle Company was not conducting mining operations upon its property or any portion of it; that J. E. Hunter was manager of that company; that Fred Johnson, until January 24, 1898, was the superintendent of the Herrington Company; that as such superintendent he had exclusive charge and control of the work done on the premises held under lease by the Herrington

Company, subject to the orders of the officers of said company; that the Orphan Belle Company had nothing to do or say with reference to where the work should be done within the lines of the premises leased to the Herrington Company, this matter being entirely under the control of Johnson, the superintendent of that company; that the actual trespass was initiated and at least a portion of it committed by the Herrington Company, between the middle or latter part of December, 1897, and January 24, 1898, during the time Johnson was superintendent of the Herrington Company and under his direction; that Johnson did not know where the end line was; that no survey to determine the position of the end line had been made; that he did not intend to go over the line; that he did not know he was over the line at the time he left the employ of the Herrington Company, January 24, 1898, but learned that fact by measurements made subsequent to that date.

Testimony was introduced to establish the extent of the trespass and the value of the ore extracted.

The only evidence introduced to establish the allegations of the complaint, as quoted, was that of Johnson, who testified that the trespass was made between December, 1897, and January, 1898, by him as superintendent of the Herrington Company; that he shipped ore from the trespass stope.

"Q. Did you have a conversation with Mr. Joe Hunter about the work you were doing at that time?

"A. I did.

"Q. State what that conversation was and when it was, as near as you can tell.

"Defendant objects, being immaterial. Objection overruled. Defendant excepts.

"Q.    State the conversation.

"A.    Mr. Hunter was the general manager of the Orphan Belle, and as such had general supervision over the lease and also in regard to shipping ore.

"Defendant objects to and moves to strike out that portion of the foregoing answer with reference to the general supervision over the lease, being a conclusion of the witness and not a statement of fact. Motion denied. Defendant excepts.

"Q.    Go on.

"A.    And when I came toward the Pinto line I asked Mr. Hunter for a survey, and he told me that he would get one as soon as he could; to go on and not go over too far, but a few feet would not make any difference, as he would make an arrangement with Mr. Strong; that he would not object if Mr. Strong went over a few feet on his lines, and he didn't think it would be any trouble."

(The Mr. Strong referred to in the above testimony was the president of The Free Coinage Gold Mining Company, one of the plaintiffs in this suit.)

Upon cross-examination, this witness repeated in substance the foregoing testimony, but it also appears from the cross-examination of this witness that Hunter had nothing whatever to do with the work done, or where it was done, by the Herrington Company or its employees, except as it appears, without dispute, that Hunter was manager of the Orphan Belle Company. The foregoing is all the evidence introduced by plaintiff upon this point.

Mr. Hunter testified with reference to this conversation:

"I heard the testimony of Mr. Johnson as to a conversation I had with him some time in January, 1898, or December, 1897. I don't think I ever

had any talk with him or ever made the statements to him concerning which he has testified.''

No evidence was offered to prove the scope of Hunter's authority as manager of the Orphan Belle Company.

Appellees concede that a lessee. is not the agent of the lessor in any sense or to any extent whatever, and that the owner of leased premises is not liable for a trespass committed by its lessee upon adjacent premises. · Their contention is thus stated in their printed brief:

''The appellees do not seek to hold the appellant merely because it was the lessor of the Herrington Company; but, the relation of landlord and tenant entirely aside, the appellant ought to be held because it instigated and incited the Herrington Company to act as it did, and because it shared in the profits of the trespass, knowing that the trespass had been committed. This is a liability which it would have to bear even were it an entire stranger to the title to the premises occupied by the Herrington Company under its lease. It is no question of liability of a master for the wrongful acts of his servant; it is no question of the lessee's agency for the lessor; it is no question of the responsibility of a principal for unauthorized acts of an independent contractor; it is no question of the responsibility of a principal for the acts of an agent employed to do something other than the act complained of. It is purely a question of whether the appellant, in the lawful meaning of the word, participated in the trespass or incited or encouraged it, or, knowing that it had been committed, shared in the profits resulting from it.''

Again, they say: ''Under no possible theory of the case could the defendant be held guilty of an

innocent trespass. The defendant was guilty of willful trespass or nothing.''

This contention is based entirely upon the conversation between Hunter, the manager of the Orphan Belle Company (lessor) and Johnson, superintendent of the Herrington Company (lessee). At the time this conversation took place, the Orphan Belle Company had no control or authority whatever over the underground operations of the Herrington Company; it was conducting no mining operations, and had no manager or agent authorized to direct mining operations; it was a lessor company, and did not have possession of its mining property except as it had such possession through its lessees.

So far as appears from the record, it was under no obligation to furnish its lessees with an underground survey. The lease granted by it was in writing and under seal, and definitely fixed and determined the boundaries of the leased premises.

For aught that appears in this record, it was the duty of the lessee to determine the underground lines of the premises it held under the lease. The law imposes upon the one mining the property the burden of having a survey to determine the location of the lines underground.

Johnson did not know where the line was; did not know that he was committing a trespass; did not intend to commit a trespass; Hunter, who derived his information from Johnson, certainly did not know that a trespass was being committed or was contemplated.

No officer of the Orphan Belle Company knew that a trespass had been committed until months after the same was committed, and necessarily did not know, at the time it received royalties on the ore extracted from the trespass stope, that it was receiving the fruits of a trespass.

The only authority cited by appellees in support of its position is *Mining Company v. Mining Company*, 11 Colo. 223-237, from which the following extract is quoted:

"The superintendent, Bearce, in mining the ore, acted for appellant and within the scope of his employment. He did not act for himself, nor for a stranger, and it is impossible that one should act for no one. Nor does it appear that he committed the wrong from any spirit of actual malice or hostility towards appellee, but solely in the interest of appellant. * * * Everything was done in its name. His salary, if he was paid for his services, was paid by the appellant, and the entire profits of his operations went into the coffers of his employer. The scope of an agent's employment is said, in *Kingsley v. Fitts*, 51 Vt. 416, 'to be determined not alone from what the principal may have told the agent to do, but from what he knows, or in the exercise of ordinary care and prudence ought to know, the agent is doing in the transaction.' * * * He was the representative of the company, as much so as would have been the president and all the other directors of the company had they exercised the same powers as the superintendent. * * * 'A person thus placed by a corporation in such a position and authority may be fairly considered as its representative *pro hac vice.*' "

The facts as set forth in the quotation clearly distinguish the above case from the case under consideration.

Attributing to the language of Hunter its broadest possible meaning, we do not believe that it can be construed into an instigation or request of the lessor corporation to its lessee to commit the trespass complained of herein, under the facts of this case. It can not be held that appellant participated

in the trespass or shared in the profits thereof, knowing it had been committed, for the reason that neither Johnson nor Hunter nor any officer of the Orphan Belle Company, at the time it received royalties on the ore taken from the trespass stope, knew that a trespass had been committed.

It is familiar law that a corporation can only act through its agents, and their acts within the scope of their authority are the acts of the corporation. The converse of this position is law. The acts of an agent of a corporation beyond the scope of his authority do not bind it.

It is not within the scope of the general authority of a manager of a mining corporation to instigate or request a trespass to be committed by the lessee of his corporation, so as to make such trespass the act of the corporation, and thereby make it liable as a willful trespasser.

In the absence of all proof as to the authority of the manager of the Orphan Belle Company in this matter, it cannot be presumed that he had any authority whatever, except such as pertains to the office of manager.

In any view which we can take of this case, as presented upon this record, the plaintiffs below should not have recovered.

At the close of the testimony defendant requested an instructed verdict in its favor. This request was refused, and error is assigned thereon.

The assignment of error is well taken. The judgment will be reversed.

*Reversed.*

*En banc.* JUSTICES CAMPBELL and GODDARD not participating.