AMERICAN SAND AND GRAVEL, INC. *v.* THE CLARK AND FRAY CONSTRUCTION COMPANY

CIRCUIT COURT                      FOURTEENTH CIRCUIT
FILE No. CV 14-636-5250

Memorandum filed December 11, 1963

*Yellin, Rosenberg & Hoffman,* of Hartford, for the plaintiff.

*Robert G. Clark,* president, The Clark & Fray Construction Company, pro se.

HOLDEN, J. This is an action by which the plaintiff seeks to recover the sum of $877.44, alleged to be the amount due for bank-run sand purchased by the defendant from the plaintiff. The action was commenced by writ and complaint dated May 21, 1963, and returnable on the third Tuesday of June, 1963. Issue was joined July 11, 1963.

The defendant, a Connecticut corporation with its principal place of business in the city of Bridgeport, filed a pro se appearance through its president, Robert G. Clark. Clark is not an attorney at law. "No person who has not been admitted as an attorney . . . shall practice law or appear as an attorney . . . [or] counselor of law for another, in any court of record in this state. . . . Nothing herein contained shall be construed . . . as prohibiting any person from practicing law or pleading at the bar . . . of this state in his own cause." General Statutes § 51-88. As a corporation, the defendant has an entity separate and apart from its officers or its stockholders. *State* v. *Harris,* 147 Conn. 589, 595. *Humphrey* v. *Argraves,* 145 Conn. 350, 354; *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 534, 535. The practice of law is not a lawful business except for members of the bar who have complied with all the conditions required by the

rules. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a business in which a corporation may legally engage. *State Bar Assn.* v. *Connecticut Bank & Trust Co.,* 145 Conn. 222, 235. As it cannot practice law directly, it cannot do so indirectly through its officers, since that would be an evasion which the law will not tolerate. In spite of the obvious impropriety of the defendant's appearance, and the presence in court of its president as attorney, the defendant was accorded an opportunity to have its case fully and fairly heard. *Higgins* v. *Hartford County Bar Assn.,* 109 Conn. 690, 692; *O'Connor* v. *Solomon,* 103 Conn. 744, 746.

This is a case in which the credibility of witnesses as determined by the court strongly influences the conclusions reached. *Pagano* v. *Mitchell,* 9 Conn. Sup. 329.

The plaintiff is in the business of selling sand and gravel in large quantities from its place of business in the town of Farmington to contractors and construction companies. Among its commodities is bank-run sand, a fine but unscreened and unprocessed sand. The usual method of doing business is for the customer to bring his truck to the plaintiff's place of business, where it is loaded. Once loaded, the truck is weighed, the difference between the total weight and the registered weight of the truck being the weight of the load. A charge slip is made out for each load. On or about the first day of each month, each customer's slips are tabulated, a total weight determined, and the customer is charged accordingly at the prevailing rate.

In 1961 Louis B. Rogers, an officer of the plaintiff corporation, met with Clark. Clark asked for a special rate for the possible purchase of 20,000 to 25,000 tons of bank-run sand by the defendant corpo-

ration. Rogers indicated that he would sell such an amount of the commodity at 45 cents per ton. There was no discussion as to the sale of sand by the yard. In 1962 and 1963 the defendant obtained various building contracts in the Hartford area and purchased sand, to the extent of about 20,000 tons, from other local dealers in the same commodity. On or about February 3, 1963, an occasion arose as a result of which the defendant determined to purchase sand from the plaintiff. Albert Chiulli, an operator of a trucking business who was engaged by the defendant to haul sand, telephoned the place of business of the plaintiff at Clark's request to determine if the pit was open and if he could secure bank-run sand. The vice president of the plaintiff corporation left a message with Chiulli that such was the case. Between February 4, 1963, and March 8, 1963, the defendant obtained from the plaintiff some 1538.30 tons of bank-run sand, which the defendant admitted receiving. The price charged by the plaintiff to all customers, except those with whom a special arrangement had been made, was 55 cents per ton, which is a reasonable price for the commodity. General Statutes § 42a-2-305.

The defendant admits that it purchased 1538.30 tons of bank-run sand but denies that the terms of the contract were those alleged by the plaintiff. This is a special issue raised by the defendant, and the burden is upon it to sustain it. *Northup* v. *Administrator*, 148 Conn. 475, 480; *Citizens Assn.* v. *Bridgeport*, 84 Conn. 383, 387; *Beach* v. *Clark*, 51 Conn. 200, 202. The special price discussed in 1961 was conditioned upon the purchase by the defendant from the plaintiff of between 20,000 and 25,000 tons of sand. The performance of the condition had to take place before the special price became operative. *Lach* v. *Cahill*, 138 Conn. 418, 421; *McIsaac* v. *Hall*, 104 Conn. 374, 379. The period from 1961 to Febru-

ary, 1963, was an unreasonable time for the plaintiff to be expected to wait in order to learn whether the defendant wished to take advantage of the suggested special price or not. *Rochester Distilling Co.* v. *Geleso,* 92 Conn. 43, 45; *Loomis* v. *Norman Printers Supply Co.,* 81 Conn. 343, 347; *Wilmot* v. *Charter Oak Life Ins. Co.,* 46 Conn. 483, 485. The defendant has not sustained the burden of proving the allegations of its special defense.

The amount of the plaintiff's bill is $875.70. In cases of this nature, interest is allowed as damages and begins to run from the time when the debt is due and payable. *Cleary* v. *Estate of White,* 134 Conn. 367, 369. The interest from April, 1963, to date is $32.93.

The issues are found for the plaintiff. Accordingly, judgment may enter for the plaintiff to recover from the defendant the sum of $908.63 and its costs.