**Rick WESTON, Intervenor–Appellee,**

**v.**

**T & T, LLC, Defendant–Appellant.**

**No. 09CA2786.**

Colorado Court of Appeals,
Div. III.

May 26, 2011.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2010.

Sweetbaum, Levin & Sands, P.C., Alan D. Sweetbaum, Tammy M. Alcock, Denver, Colorado, for Intervenor–Appellee.

Fleishman & Shapiro P.C., A. Craig Fleishman, Philip E. Kay, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

T & T, LLC (T & T) appeals the trial court's judgment in favor of Rick Weston (creditor). Specifically, T & T contends that the trial court erred when it (1) permitted a non-attorney to represent T & T during the proceedings; (2) allowed creditor to intervene in the action despite his failure to file a motion pursuant to C.R.C.P. 24(c); (3) permitted creditor to assert a claim under the Colorado Uniform Fraudulent Transfer Act (CUFTA), §§ 38–8–101 to –112, C.R.S.2010; (4) awarded creditor twenty percent prejudgment interest on his attorney fees and costs; and (5) awarded certain attorney and expert witness fees. We affirm the judgment in part, vacate it in part, and remand for computation of interest on the award of attorney fees and costs.

## I. Background

Michael Shinn (entrepreneur) held interests in a variety of companies, including National Home Trust Corporation (NHTC), which developed and sold franchises premised on a residential rent-to-own concept. Entrepreneur's two children were the sole members of T & T, and his son, Todd Shinn, was the manager.

In the fall of 2005, entrepreneur decided to purchase a restaurant and special event location (Manor House) through T & T. Howev-

er, his children did not have the capital or credit to finance the purchase. Entrepreneur then devised a plan to transfer money from various other accounts and entities, including NHTC, into his children's accounts to give them the appearance of financial viability. Creditor loaned $150,000 to NHTC in exchange for a security agreement and promissory note (Note), the purpose of which was purportedly to assist NHTC in paying off another creditor. Shortly thereafter, NHTC transferred $100,000 to another of entrepreneur's companies. Following that, a series of large transfers among entrepreneur's various companies took place. This culminated in transfers to the children, individually, who then transferred money into T & T's account to purchase Manor House.

Two former employees of NHTC filed this action against NHTC, alleging that entrepreneur had transferred several hundred thousand dollars from NHTC to T & T, which in turn used it to purchase Manor House. The employees requested that they be awarded an interest in T & T.

In the interim, NHTC defaulted on creditor's loan and creditor obtained a default judgment against NHTC. In an effort to collect on that judgment, creditor sought to intervene in this action by filing an intervention complaint. His complaint alleged that funds had been fraudulently transferred from NHTC to T & T, and he requested the appointment of a receiver, money damages, and a constructive trust on T & T's assets. The employees settled their claims, which then were dismissed with prejudice.

After a protracted period of discovery, motions, and a trial, the trial court determined that entrepreneur had transferred creditor's money in violation of CUFTA and awarded creditor $160,666.67, plus interest, attorney fees, and costs in accordance with the terms of the promissory note. This appeal followed.

## II. Intervention

At the outset, we consider T & T's argument that the trial court erred in permitting creditor to intervene upon the filing of a complaint but without filing a motion seeking intervention as required by C.R.C.P. 24(c).

We conclude that the trial court did not abuse its discretion in permitting creditor's intervention.

■ We review a trial court's conclusion as to whether a would-be permissive intervenor has satisfied the requirements for intervention under C.R.C.P. 24(b) for an abuse of discretion. *See Grijalva v. Elkins,* 132 Colo. 315, 318–19, 287 P.2d 970, 972 (1955) ("It can seldom, if ever, be shown that the trial court abused its discretion in denying the permissive right to intervene.").

■ We conclude that the appropriate standard for review of a trial court's conclusion as to whether a would—be intervenor has satisfied the procedural requirements of C.R.C.P. 24(c) is also for an abuse of discretion. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 595 (7th Cir. 1993) ("Whether to permit a procedurally defective motion to intervene is within the sound discretion of the district court."); *Providence Baptist Church v. Hillandale Comm., Ltd.,* 425 F.3d 309, 313 (6th Cir.2005) (same); *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 474 (9th Cir.1992) (same); *cf. Lattany v. Garcia,* 140 P.3d 348, 350 (Colo.App.2006) (abuse of discretion review for timeliness determination). This approach accords with the general principle that "issues involving what can broadly be labeled 'supervision of litigation'" are reviewed for abuse of discretion. *Pierce v. Underwood,* 487 U.S. 552, 559, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

Intervention may be permitted by the trial court where a statute confers a conditional right to intervene or when an applicant's claim or defense and the main action share a common question of law or fact. C.R.C.P. 24(b) (permissive intervention). Persons desiring intervention shall serve a motion to intervene upon the parties, stating the grounds therefor. C.R.C.P. 24(c).

■ Although the requirements of C.R.C.P. 24(c) should not be disregarded, we disagree with T & T that creditor's failure to file a motion precluded intervention. *See* 7C C. Wright, A. Miller & M.K. Kane, *Federal Practice and Procedure* § 1914 (3d ed. 2007)

(even the lack of a formal motion to intervene may be overlooked in compelling circumstances); *see also Am. Nat'l Bank & Trust Co. v. Bailey,* 750 F.2d 577, 582 (7th Cir. 1984) (party's failure to file a formal motion to intervene before it files a counterclaim would not necessarily be fatal to its status as an intervenor); *Spring Constr. Co. v. Harris,* 614 F.2d 374, 377 (4th Cir.1980) (where a party fails to strictly comply with the requirements of Rule 24(c), the proper approach is to disregard non-prejudicial defects); *Shores v. Hendy Realization Co.,* 133 F.2d 738, 742 (9th Cir.1943) (where petition fully stated the grounds and facts upon which relief was asked, the failure to fully comply with procedure was a technicality that did not result in the invasion of a substantial right).

In addition, we conclude that *Capitol Industrial Bank v. Strain,* 166 Colo. 55, 442 P.2d 187 (1968), upon which T & T relies, is distinguishable. There, the intervenor filed a motion to intervene, *but no pleading.* Over objection, the trial court proceeded to hear the case on the merits and entered judgment for the intervenor. In reversing the judgment, our supreme court concluded that the trial court's failure to require a pleading deprived the opposing party of the opportunity to assert defenses to the intervenor's claim. *Id.* at 59, 442 P.2d at 188–89.

T & T did not suffer any similar prejudice here. Although creditor did not strictly comply with the rule, his complaint stated the grounds and facts upon which intervention was sought, together with his claim. Furthermore, unlike the opposing party in *Capitol Industrial Bank,* T & T was given a full opportunity to respond to the allegations of creditor's complaint. Therefore, any failure to comply precisely with the rule was not to the detriment of T & T's substantial rights. T & T would have us exalt form over substance; we decline to do so.

Therefore, the trial court did not abuse its discretion in permitting creditor to intervene.

### III. Pleading of CUFTA Claims

T & T next argues that creditor's complaint in intervention failed to state a claim under CUFTA. We conclude that, while the complaint does not cite to CUFTA, or expressly allege a CUFTA claim, it is nevertheless sufficient.

■ Prior to the adoption of the Colorado Rules of Civil Procedure, litigants who misapprehended the precise and technical legal theory of their cause of action would find themselves out of court and without redress for their wrong. *Bridges v. Ingram,* 122 Colo. 501, 506, 223 P.2d 1051, 1053–54 (1950). However, the adoption of the rules was meant to de-emphasize the "cause of action" theory. *Id.* "Under our rules of civil procedure, the precise legal theory asserted by a claimant is not controlling, so long as the complaint gives sufficient notice of the transaction sued upon." *Yoder v. Hooper,* 695 P.2d 1182, 1185 (Colo.App.1984), *aff'd,* 737 P.2d 852 (Colo.1987); *see also Brown v. Central City Opera House Ass'n,* 36 Colo.App. 334, 336, 542 P.2d 86, 88 (1975) ("[T]he 'substance of the claim rather than the appellation applied to the pleading by the litigant is what controls.'") (quoting *Hutchinson v. Hutchinson,* 149 Colo. 38, 41, 367 P.2d 594, 596 (1961)), *aff'd as modified,* 191 Colo. 372, 553 P.2d 64 (1976).

■ Creditor's complaint in intervention alleged numerous times that entrepreneur and NHTC had fraudulently, improperly, and unlawfully transferred the proceeds of creditor's loan to T & T and other entities. Indeed, during opening statements at trial, T & T described numerous documents that it intended to offer to counter the claim that the funds used to purchase Manor House had come from creditor. Therefore, T & T was aware of the substance of creditor's claim and it suffered no prejudice due to the form of creditor's pleading.

### IV. Non-attorney Representation of an LLC

T & T further contends that it is entitled to a new trial because the trial court erred in permitting a non-attorney to represent it. We are not persuaded.

■ A limited liability company is an artificial entity created by law. "Thus, unlike a natural person, it generally cannot appear or

act in a judicial proceeding in person, but must be represented by a licensed attorney." *Keller Corp. v. Kelley,* 187 P.3d 1133, 1136 (Colo.App.2008). One of the public policy motivations for this and similar statutory provisions that regulate the practice of law is to prevent laying "open the gates to the practice of law for entry to those corporate officers or agents who have not been qualified to practice law and who are not amenable to the general discipline of the court." *Woodford Mfg. Co. v. A.O.Q., Inc.,* 772 P.2d 652, 653 (Colo.App.1988) (quoting *Union Sav. Ass'n v. Home Owners Aid, Inc.,* 23 Ohio St.2d 60, 262 N.E.2d 558, 561 (1970)). Such regulations are also meant to protect "citizens and litigants in the administration of justice, against the mistakes of the ignorant ... and the machinations of [the] unscrupulous." *Bennie v. Triangle Ranch Co.,* 73 Colo. 586, 588, 216 P. 718, 719 (1923).

However, section 13–1–127(2), C.R.S.2010, provides a limited exception to this general rule:

> Except as otherwise provided [as to county courts], a closely held entity may be represented before any court of record or any administrative agency by an officer of such closely held entity if:
>
> (a) The amount at issue in the controversy or matter before the court or agency does not exceed ten thousand dollars, exclusive of costs, interest, or statutory penalties, on and after January 1, 1991 ....

This section allows closely held entities, which would otherwise face a default judgment or be unable to initiate litigation on their own behalf, to proceed without the appearance of an attorney.

On February 5, 2007, T & T's first counsel, now appellate counsel, withdrew from the case. On July 11, 2007, second counsel entered his appearance for T & T. On October 12, 2007, second counsel withdrew. Shortly thereafter, creditor filed a motion to strike the pleadings and motions filed on behalf of T & T by entrepreneur or his son, the manager. The trial court's status conference order (Nov. 1, 2007) permitted manager to appear provisionally but also stated that documentation must be presented to demonstrate that T & T fit within the statutory

exception. At a subsequent hearing, the trial court found and concluded as follows:

> I have reviewed the documents submitted by all parties, and considered the statements of counsel and of [entrepreneur]. I've also taken into account the applicable case and statut[ory] law. I make the following findings of fact, conclusions of law and enter the following orders:
>
> 1. As a preliminary matter, I now am satisfied that [entrepreneur] can appear on behalf of T & T, even though he is not an attorney. I have been presented with documentation that convinces me that [entrepreneur] is "a person in whom the management of a limited liability company is vested or reserved...." (C.R.S.1973 § 13–1–127(2.3)(c).)

The record does not contain any motions or other documents requesting representation by entrepreneur, any briefs filed by the parties on the subject, the transcript of the hearing, or the exhibits there presented. Therefore, our ability to review the evidence and the rationale of the trial court is very limited.

At the outset, it is not clear why the trial court cited to section 13–1–127(2.3)(c), C.R.S. 1973, as the pertinent subsection was first inserted into the statute in 1998. Ch. 166, sec. 1, 1998 Colo. Sess. Laws 490. Assuming for the purpose of our review that the citation to the 1973 statute was a scrivener's error, we nonetheless reject the court's conclusion because that subsection does not stand alone.

> The subsection, in pertinent part, provides:
>
> For the purposes of this section, each of the following persons shall be presumed to have the authority to appear on behalf of the closely held entity upon providing evidence of the person's holding the specified office or status:
>
> . . .
>
> (c) A person in whom the management of a limited liability company is vested or reserved.
>
> . . .

§ 13–1–127(2.3)(c), C.R.S.2010. The presumption created by this section relates to

the permissive language of section 13–1–127(2), which states that closely held entities "*may* be represented by ... an officer of such closely held entity." (Emphasis added.) It is not an independent provision eliminating or bypassing the amount in controversy requirement of section 13–1–127(2)(a). Therefore, in our view, the trial court's analysis was not complete.

Creditor's complaint requested the appointment of a receiver, the imposition of a constructive trust over T & T's assets, and damages in an effort to recover his default judgment against NHTC in the amount of $150,000, plus interest and costs. Thus, T & T could not have satisfied the statutory exception and entrepreneur should not have been permitted to represent T & T in these proceedings. *See Keller*, 187 P.3d at 1136 (the amount involved in the overall litigation is the test under section 13–1–127(2)(a)). Therefore, the trial court erred in permitting entrepreneur to represent T & T.

■ However, that does not complete our analysis. T & T requests a new trial. Because T & T affirmatively requested and pursued representation by entrepreneur despite admonishments from the trial court, we conclude that granting it a new trial would be inappropriate.

As a business entity, an LLC can only act through its agents. Section 7–80–405(1), C.R.S.2010, states:

> If the articles of organization provide that management of the limited liability company is vested in one or more managers:
>
> . . .
>
> (b) Each manager is an agent of the limited liability company for the purposes of its business and *an act of a manager ... binds the limited liability company*, unless the manager had no authority to act for the limited liability company in the particular matter and the person with whom the manager was dealing had notice that the manager lacked authority.

(Emphasis added.) *See also Orphan Belle Mining & Milling Co. v. Pinto Mining Co.*, 35 Colo. 564, 572, 85 P. 323, 325 (1906) (holding a corporation can only act through its agents, and their acts within the scope of

their authority are the acts of the corporation).

Here, entrepreneur and his son both requested and urged that they, or one of them, be permitted to represent T & T in this litigation. In the process of doing so, both were admonished that T & T would have to satisfy the statutory exception to the requirement that it appear through counsel. In requesting and urging that they be permitted to represent T & T, they acted not as counsel but as agents for, and their acts were binding upon, T & T. Although it would not be an absurd construction of section 13–1–127 to require a limited liability company to retain counsel to request leave to proceed through its manager and without counsel, such a construction would be self-defeating.

■ A party may not seek to benefit from an error that it has invited or injected into the case. *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 65 (Colo. App.2004). This general rule has been applied in this context. *See American Sand & Gravel, Inc. v. Clark & Fray Constr. Co.*, 2 Conn.Cir.Ct. 284, 198 A.2d 68, 69 (1963) (although appearance of president on behalf of corporation improper, corporation had been afforded the opportunity to have its case fully and fairly heard); *Jardine Estates, Inc. v. Koppel*, 24 N.J. 536, 133 A.2d 1, 3–4 (1957) (because the corporation had appeared and defended on the merits, it could not move to set aside a judgment rendered against it at trial on the ground that it was not represented by an attorney); *Cohn v. Warschauer Sick Support Soc'y Bnei Israel*, 19 N.Y.S.2d 742, 743 (N.Y.App. Term 1940) (provision requiring corporation to be represented by an attorney was not intended to penalize the adverse party for the corporation's improper appearance).

Nevertheless, T & T contends that it operated under a misapprehension of the law as the trial court did not inform it that, absent exception, only a licensed attorney could represent the company. This contention is rebutted by the record. On the date that T & T's second counsel was permitted to withdraw, the trial court advised T & T that, absent statutory exceptions, a business entity could not appear in court unless it was repre-

sented by counsel. T & T advised the trial court that it would retain counsel and the trial date was vacated. Two weeks later, at another status conference, the trial court permitted entrepreneur's son to appear provisionally for T & T pending submission of documentation demonstrating that T & T met the statutory exception for non-attorney representation of a business entity.

In March 2008, the trial court yet again advised entrepreneur and his son that they could not represent T & T. The trial court emphasized that an attorney had to appear for the entity or they needed to demonstrate that T & T was subject to the statutory exception. Despite these admonitions, entrepreneur and his son continued to affirmatively urge the trial court to allow entrepreneur to represent T & T. It is clear from the court's order that entrepreneur submitted documentation and made oral arguments in an attempt to convince the trial court that he could appropriately represent T & T.

Therefore, any error in permitting entrepreneur to represent T & T was invited by T & T and the granting of a new trial on that basis is not an appropriate remedy.

### V. Damages

In its final order, the trial court concluded that entrepreneur had fraudulently conveyed the proceeds of creditor's loan from NHTC to T & T for the purchase of Manor House. Based on that conclusion, the trial court awarded creditor $160,666.67, the amount of the default judgment, accruing twenty percent interest from March 27, 2007, the date the original default judgment was entered against NHTC.

On appeal, T & T argues that the trial court erred in this award because it exceeds the amount authorized by CUFTA, which, it argues, is the original loan amount of $150,000. However, T & T never objected to the amount, or measure, of the damages, nor did it present these CUFTA arguments to trial court. Therefore, they have not been

preserved for our review. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513–14 (Colo.1986) (holding that non-jurisdictional issues not raised in the trial court are deemed waived and will not be considered on appeal).

Rather, the argument made to the trial court in post-trial motions, and incorporated into T & T's brief here, concerned the date from which interest accrues. Specifically, T & T's argument was premised on an ambiguity in the trial court's bench ruling in which the trial court stated: "[The] judgment will draw interest at the default rate of 20 percent from the date of the entry of judgment."[1] T & T contends that the trial court's bench ruling unambiguously states that interest should accrue from the date of final judgment in this action rather than the date of the default judgment. However, the language upon which T & T relies is far from clear and, more importantly, it was not included in the final written order. In its final written order and again in its post-trial orders, the trial court was quite clear that the date of accrual was the date of the default judgment. Therefore, T & T's argument is unavailing.

### VI. Interest on Attorney Fees and Costs

T & T also contends that the trial court erred in awarding creditor twenty percent interest on his attorney fees and costs, accruing from the date of the default judgment against NHTC, March 27, 2007. To the extent, if any, the trial court did so, we agree.

The trial court's final order stated:

Verdict was rendered ... in favor of [creditor] and against [T & T], awarding [creditor] [$160,666.67], accruing interest at 20% compounded annually from the date of entry of the judgment, plus attorney fees and costs.

This language, in our view, is appropriate. However, in the concluding paragraph of its order, the trial court appears to award credi-

---

1. The award of damages and attorney fees is in accordance with the terms of the promissory note executed by NHTC but not T & T. The issue of whether it was appropriate for the trial court to apply the twenty percent interest rate and the

prevailing attorney fee shifting provisions of the promissory note to a judgment against T & T was not raised in the trial court or on appeal. We, therefore, express no opinion on those issues.

tor twenty percent interest, accruing from the date of default judgment against NHTC, on creditor's attorney fees and costs by stating:

It is hereby ordered that judgment be and hereby is entered in favor of [creditor] against [T & T] in the amount of $160,666.67 plus attorneys' fees and costs in the amount of $133,258.31, accruing 20% interest, compounded annually, from March 27, 2007 until paid in full.

## A. Date of Accrual

On appeal, creditor concedes that the interest on attorney fees and costs does not begin accruing on the date of the default judgment against NHTC. Creditor, however, argues that interest should accrue from July 9, 2009, when the trial court orally announced its findings of fact and conclusions of law. Attorney fees and costs were quantified in an order entered September 23, 2009, but that order was subsequently vacated so that there would be but one final judgment. T & T argues that interest should accrue from the entry of final judgment, October 27, 2009. We agree with T & T.

When, as here, attorney fees are the consequence of a contractual agreement to shift the burdens of litigation, they are treated as costs. *Ferrell v. Glenwood Brokers, Ltd.*, 848 P.2d 936, 941–42 (Colo.1993). "[I]nterest on the award [of attorney fees as costs] runs from the date of the final order quantifying the amount of fees, and not from any earlier judgment or order that might have established a party's right to recover ... fees without specifying an amount." *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo.App.2006).

In our view, under these circumstances, the final order quantifying the attorney fees was not entered until the entry of final judgment, here October 27, 2009.

## B. Interest Rate

T & T also contends that the twenty percent interest rate only applies to the underlying principal of the loan and not to any attorney fees or costs. Again, we agree.

Promissory notes are subject to the principles of interpretation and construction that govern contracts. *Cache Nat'l Bank v. Lusher*, 882 P.2d 952, 956–57 (Colo. 1994) (citing *Appliances, Inc. v. Yost*, 181 Conn. 207, 435 A.2d 1, 2 (1980) (promissory notes are nothing more than written contracts for the payment of money)). "The primary goal of contract interpretation is to determine and give effect to the intent of the parties." *Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373, 376 (Colo.2000). We determine the intent of the parties from the language of the instrument. *USI Properties East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo.1997). The language of the instrument should be "construed in harmony with the plain and generally accepted meaning of the words employed." *Id.* A reviewing court looks to extraneous evidence only where there is an ambiguity in the contract. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978).

The relevant provisions of the Note state:

Should maker default on this principal reduction the rate applicable for the remainder of the term shall be 20% . . . .

. . . .

If Maker is in Default, interest shall accrue and be payable *on the unpaid principal balance of this Note, and all accrued and unpaid interest,* from and after the date of any such Default at twenty percent (20%) per annum (the "Default Rate"), until all amounts due hereunder are paid in full.

Maker and all parties now or hereafter liable for the payment hereof ... hereby agree to pay on demand all costs and expenses, including attorneys' fees and expenses, which may be incurred in the collection of the Note or any part thereof.

(Emphasis added.)

Upon examining the promissory note, we conclude that no ambiguity or uncertainty exists. The clear intent of the parties was that the twenty percent interest rate would apply only to the unpaid principal and accrued but unpaid interest.

Therefore, we vacate the portion of the judgment that can be read to award twenty percent interest on attorney fees and costs accruing from March 27, 2007. On remand, the trial court shall enter an order that interest on attorney fees and costs accrues from October 27, 2009, at the rate specified in section 5–12–106(1)(b), C.R.S.2010.

## C. Attorney and Expert Witness Fees

We next consider whether creditor provided sufficient evidence that his attorney and expert witness fees were reasonable. We conclude that he did.

The determination of whether attorney fees are reasonable is a question of fact for the trial court and is reviewed under an abuse of discretion standard. *Brody v. Hellman,* 167 P.3d 192, 198 (Colo.App.2007). An appellate court will not disturb the trial court's conclusions unless they are patently erroneous and unsupported by the evidence. *Id.* The trial court must make sufficient findings, so that, when they are considered together with the record, the reviewing court can conduct a meaningful review. *Valentine v. Mountain States Mut. Cas. Co.,* 252 P.3d 1182, 1190 (Colo.App.2011).

Here, creditor originally filed an affidavit from counsel explaining its hourly rates and representing that those rates were reasonable. This affidavit was supported by invoices and related documents. Creditor also filed his own affidavit describing amounts paid, as well as various documents demonstrating such payments. After T & T filed an objection to this statement of fees and costs, creditor submitted further supporting documentation, including billing agreements, timekeeping sheets, cancelled checks, additional invoices, and evidence from the expert witness describing his billing structure and the work he had done preparing for trial.

As to the attorney fee request, the trial court concluded that in light of the nature of the case and the extended period of time it had been pending, creditor's requested attorney fees were reasonable. The court also concluded that in light of the extensive records, and time spent preparing for depositions and trial, the fees associated with the expert witness were necessary and reasonable.

In its objection, and again here, T & T merely argued that creditor had not presented enough evidence to support the trial court's conclusion that the fees were, in fact, reasonable and necessary. It offered no rebuttal evidence as to the reasonableness of the fees in the trial court, nor did it request a hearing on the issue.

On this record, we conclude that creditor's evidence was sufficient to allow the court to make a reasoned determination about whether the requested fees were reasonable and necessary. *See Madison Capital Co. v. Star Acquisition VIII,* 214 P.3d 557, 561 (Colo. App.2009) (unrebutted testimony of counsel as to amount and reasonableness of fees was sufficient to support fee award); *GF Gaming Corp. v. Taylor,* 205 P.3d 523, 526 (Colo.App. 2009) (no abuse of discretion where the trial court accepted party's testimony concerning reasonableness and necessity of fees and opposing party presented no rebuttal evidence); *P & M Vending Co. v. Half Shell of Boston, Inc.,* 41 Colo.App. 78, 82, 579 P.2d 93, 96 (1978) (same).

In addition, because we can infer from the record that the trial court relied upon creditor's evidence concerning the fees, we conclude that the trial court's findings were also sufficient. *See Foster v. Phillips,* 6 P.3d 791, 796 (Colo.App.1999). Therefore, the trial court did not abuse its discretion in awarding the requested attorney and expert witness fees to creditor.

The judgment is affirmed as to all matters with the exception of the accrual date and interest rate to be charged on creditor's attorney fees and costs, which are vacated, and the case is remanded to the trial court for further proceedings on those matters consistent with this opinion.

FURMAN and PLANK *, JJ., concur.