25CA0743 Peo in Interest of Fair 09-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0743
Pueblo County District Court No. 25MH30031
Honorable Amiel Markenson, Judge

---

People of the State of Colorado,

Petitioner-Appellant,

In the Interest of John Thomas Fair

Respondent-Appellee.

---

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE JOHNSON
Welling and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 4, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     The State sought and obtained an order authorizing the involuntary administration of Depakote and Haldol to John Thomas Fair (Fair).  The district court, however, denied the State's request to involuntarily administer Zyprexa on grounds that the State failed to prove by clear and convincing evidence the fourth factor under *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985).  The State appeals that portion of the court's order.  Due to insufficient factual findings, we are unable to meaningfully review the district court's findings on the fourth *Medina* factor.  Therefore, we reverse the portion of the order denying the State's request to involuntarily administer Zyprexa and remand the case to the district court for further proceedings.  We otherwise affirm the order.

## I.     Background

¶ 2     Fair was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) after being found incompetent to proceed on criminal charges.  According to the affidavit of his treating physician, Dr. Hareesh Pillai (Dr. Pillai), Fair is a thirty-eight-year-old man with a long history of psychiatric illness, restoration treatment, and poor medication compliance.  He has been diagnosed with schizoaffective disorder.

1

¶ 3    When Fair arrived at CMHHIP, he appeared to be hallucinating, and he behaved in a paranoid and aggressive manner. After yelling at housekeeping, throwing things, punching walls, and threatening to "beat the shit out of" security staff, Fair was involuntarily medicated on an emergency basis with Zyprexa, an antipsychotic, and Depakote, a mood stabilizer. His symptoms improved on Zyprexa and Depakote, but he refused Zyprexa after the ten-day course of emergency medications ended.

¶ 4    The State petitioned for a six-month order permitting it to involuntarily administer Zyprexa, Depakote, and Haldol — a second antipsychotic for use only on an as-needed basis. In his accompanying affidavit, Dr. Pillai averred that (1) Fair needed antipsychotic medication both to prevent a deterioration in his mental condition and to preserve the safety of others in the institution; (2) a less intrusive treatment was not available; and (3) Fair's need for treatment was sufficiently compelling to override any bona fide and legitimate interest in refusing treatment.

¶ 5    Dr. Pillai's affidavit was admitted at the hearing on the petition, at which both Fair and Dr. Pillai testified. As relevant here, Fair testified as follows:

- He does not have a mental illness.

- He had previously taken Seroquel (an antipsychotic medication) at the Denver Detention Center.

- Seroquel treated his symptoms and didn't cause side effects.

- Zyprexa caused him to experience dizziness and low energy.

- He would rather take Seroquel than Zyprexa.

¶ 6    Dr. Pillai testified that he recommended Zyprexa instead of Seroquel because

- Fair had shown improvement on Zyprexa;

- Seroquel is not a first-line treatment for severe psychotic illness;

- Seroquel is less effective, causes more side effects, and usually requires a much higher dose than Zyprexa to treat psychotic symptoms; and

- Fair's medical records since 2020 did not indicate an adherence to any antipsychotic treatment.

Dr. Pillai further testified that, from his review, Fair's records did not show that Fair had ever been treated with Seroquel, but he also acknowledged that he "may be missing parts of [Fair's] record where he was taking Seroquel."

¶ 7     At the conclusion of the hearing, the district court "automatically" granted an order to administer Depakote and Haldol because Fair had not objected to being ordered to take those medications. As to Zyprexa, the district court denied the petition. The court determined, without making any factual findings, that the State had proved the first three *Medina* factors but it also concluded that the State had not established the fourth *Medina* factor for Zyprexa by clear and convincing evidence.

¶ 8     The parties characterize the district court's findings and legal conclusions differently, and because the wording is important to our analysis, we recount the court's denial of Zyprexa's administration here:

> I think [for] *Medina* factors 1 through 3 I would find just for appellate purposes, even without making [a] lengthy and detailed finding now that they have been met by clear and convincing evidence . . . . It's really the fourth factor that I have the issue with . . . .

> To some extent I agree with [the People] that there are credibility issues clearly with [Fair]. That's not a question. There are credibility issues.
>
> However, even with those credibility issues, at least as to the dizziness and the fatigue, those have been noted by [Fair] to staff as well. The[re] still could be issues with his . . . credibility, but . . . the Court finds that there's been enough to show that he has had those issues. And those are bona fide and legitimate interests, being dizzy and having fatigue.
>
> The Court finds that he has stated in the past he has taken Seroquel without those side effects. Even with my concerns about his credibility, the testimony from the doctor, at least as the Court remembers it, is he doesn't have any record of the Seroquel ever being taken. However, he may be missing records.
>
> So that's not really — not questioning Dr. Pillai's credibility at all. I found him extremely credible. I think that actually [boosts his credibility] to say, I may have not seen that, or . . . I don't have that record. If anything, it makes him more credible. But as to this issue I don't know if that's true or not 100 percent.
>
> Therefore, I can't find by clear and convincing evidence that the need for treatment is sufficiently compelling and overrides that bona fide legitimate interest, just because of the unknown.

The court further found that CMHHIP could "try [Fair] on Seroquel," deeming that treatment "appropriate."

5

¶ 9    The State now appeals.

## II.    Analysis

¶ 10    On appeal, the State argues that the district court erred in its application of the law to the evidence regarding Zyprexa. For the reasons below, we conclude that we lack sufficient findings on the fourth *Medina* factor to adequately review the court's ruling, and because the court did not make any findings on the second and third factors, we cannot rely on the court's findings on those factors to bridge that gap.

### A.    Standard of Review

¶ 11    We review a court order involving the involuntary administration of medication as a mixed question of law and fact. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). When reviewing a district court's application of the *Medina* factors, we defer to the court's findings of fact if supported by the record, and we review the court's legal conclusions de novo. *People v. Marquardt*, 2016 CO 4, ¶ 8. We also defer to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be

drawn from the evidence. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

### B. Insufficient Findings on the Fourth *Medina* Factor

¶ 12    When the State seeks to involuntarily administer antipsychotic medication to a patient, it must prove, by clear and convincing evidence, that (1) the patient is incompetent to participate effectively in the treatment decision; (2) treatment by medication is necessary either to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient causing serious harm to themself or others in the institution; (3) a less intrusive treatment alternative isn't available; and (4) the patient's need for treatment with medication is sufficiently compelling to override their bona fide and legitimate interest in refusing medication. *Medina*, 705 P.2d at 973.

¶ 13    The fourth factor involves a two-step analysis: (1)  whether the patient has a "bona fide and legitimate" reason for refusing the medication; and, if he does, (2) "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the

life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.* at 974.

¶ 14    The second step of the analysis is a balancing test under which the court weighs the patient's interest in refusing medication against the State's interests in involuntarily medicating the patient. To review whether the court misapplied the law when it performed this balancing test, we first note that the court made specific findings as to Fair's bona fide and legitimate reasons for refusing Zyprexa. The parties agree, as do we, that the record supports the district court's finding that Fair's interest in avoiding dizziness and low energy is a bona fide and legitimate reason to refuse Zyprexa. But the court did not make any findings as to the State's interests, nor did it then make findings that balanced Fair's interest against the State's interest to explain why Fair's interest prevailed.

¶ 15    We acknowledge that a court's findings might be implicit, *see People in Interest of C.L.T.*, 2017 COA 119, ¶ 36, but its ruling must be sufficiently understandable to allow for appellate review, *Weston v. T & T, LLC*, 271 P.3d 552, 561 (Colo. App. 2011) (A district "court must make sufficient findings, so that, when they are considered together with the record, the reviewing court can conduct a

meaningful review."). We determine for three reasons that the court's lack of findings on the fourth *Medina* factor renders its ruling unreviewable.

¶ 16    First, the court's ruling on the fourth *Medina* factor implies that (1) the State did not adequately refute Fair's testimony that he had previously taken Seroquel without side effects, and (2) Seroquel was an appropriate and less intrusive treatment. The inquiry concerning treatment alternatives, such as Fair's suggested voluntary treatment with Seroquel rather than the involuntary treatment with Zyprexa, falls under the third *Medina* factor. *See Medina*, 705 P.2d at 973; *see also, e.g., R.C.*, ¶¶ 6-12 (analyzing less intrusive treatment alternatives under the third *Medina* factor). This factor requires the court to reach a legal conclusion as to whether a less intrusive alternative to the proposed medications is available, based on factual findings, including whether the alternative treatment (1) has less harmful side effects and (2) is at least as effective at alleviating a patient's condition as the proposed treatment. *Strodtman*, 293 P.3d at 133; *see also Medina*, 705 P.2d at 973-74 (discussing the appropriate analysis under the third and fourth factors). As we read the district court's order, it at best

found that Fair suffered fewer side effects from Seroquel than Zyprexa. But the court made no findings comparing the efficacy of Fair's preferred medication with the State's requested one.

¶ 17 Second, the court's ruling on the fourth *Medina* factor does not address whether Fair's long-term prognosis without the treatment is so "unfavorable" that the State's interests in his health and in the safety of others in the institution must override his bona fide and legitimate interests in refusing Zyprexa. And to the extent the court concluded that the State had proved the second *Medina* factor by showing that Fair required treatment to prevent a significant and likely long-term deterioration in his mental condition, we cannot, on the existing record, square that finding with the court's ruling on the fourth factor, which must have impliedly found that Fair's prognosis without treatment was not so unfavorable that the State's interests would prevail over his. Indeed, we discern *no* findings, implicit or explicit, about either the gravity of Fair's prognosis without antipsychotic treatment or the strength of the State's interests in treating him.

¶ 18 Finally, the absence of findings about Fair's prognosis without treatment and the State's legitimate interest in medicating him is

further complicated by the court's ambiguous credibility findings. We generally defer to a court's credibility determinations, *see R.C.*, ¶ 7, and we may not reweigh the evidence, *People in Interest of A.R.*, 2018 COA 177, ¶ 54, *aff'd*, 2020 CO 10. But here, the court found Dr. Pillai "extremely credible," while it noted that there were "credibility issues" with Fair's testimony. Nevertheless, in ruling as it did, the court appears to have credited some of Fair's testimony, but it did not explain why it might have accepted some statements while rejecting others.

## C. Relief

¶ 19 When a district court misapplies the law, there have been times when an appellate court could properly apply the law to the court's factual findings on de novo review and simply reverse the court's order. *See People in Interest of Marquardt*, 2014 COA 57, ¶¶ 21-22 (reversing because the district court misapplied the second *Medina* factor), *aff'd*, 2016 CO 4; *People in Interest of Joergensen*, 2022 COA 126, ¶ 13 (reversing because the district court misapplied of one of the factors from *Sell v. United States*, 539 U.S. 166, 179-82 (2003)).

¶ 20 Unlike in *Marquardt* and *Joergensen*, we do not have sufficient factual findings for de novo review in Fair's case. This is because the court bypassed an essential part of the fourth *Medina* factor — whether the State has legitimate interests in treating Fair with the requested medication and how those interests weigh against Fair's refusal. To the extent we might generally be able to discern such findings from the other *Medina* factors, we cannot do so here because of the complete absence of factual findings on the third factor and only partial findings on the second factor. For these reasons, we are unable to provide meaningful appellate review of the court's order denying the State's request to involuntarily administer Zyprexa to Fair. Thus, we conclude that we must remand this case to the district court to reconsider its order in light of the legal principles discussed in this opinion.

¶ 21 We are cognizant that by the time this opinion is announced, more than four months will have passed since the April 7 evidentiary hearing, and Fair's relevant medical information may have changed. For that reason, we will leave it to the court's discretion to determine whether it needs to receive additional evidence on remand.

### III.    Conclusion

¶ 22    The portion of the district court's order denying the State's petition for the involuntary administration of Zyprexa is reversed, and we remand the case for further proceedings consistent with this opinion.  The order is otherwise affirmed.

JUDGE WELLING and JUDGE GROVE concur.