24CA2022 Rask Living Trust v Rydz 01-08-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2022
La Plata County District Court No. 23CV30010
Honorable Kim S. Shropshire, Judge
Honorable Douglas S. Walker, Judge

Rask Living Trust, and its trustee, Ronald A. Keller,

Plaintiff-Appellee,

v.

Mark Rydz,

Defendant-Appellant.

JUDGMENT AND ORDERS AFFIRMED

Division VI
Opinion by JUDGE WELLING
Gomez and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 8, 2026

Dugan & Associates, P.C., Thomas P. Dugan, Durango, Colorado, for Plaintiff-Appellee

Mark Rydz, Pro Se

¶ 1 Plaintiffs, Rask Living Trust (Trust) and its sole trustee, Ronald A. Keller, brought a quiet title claim against defendant, Mark Rydz, to clarify their property rights on an access easement and establish an easement by estoppel. Rydz appeals the trial court's partial summary judgment ruling in favor of the plaintiffs on his counterclaim, the judgment on the easements following trial, and the trial court's orders awarding attorney fees. We affirm.

## I. Background

¶ 2 The Trust is an Arizona revocable living trust that holds title to real property located on Ute Canyon Road in Durango, Colorado — legally described as Lot 1, Booker Minor Exemption Subdivision (Booker subdivision). Rydz holds title to a different parcel of real property also located on Ute Canyon Road — legally described as Lot 2 of the Hotter Minor Exemption Subdivision (Hotter subdivision). Rydz acquired his property in 2013. The Booker subdivision and Hotter subdivision share a border.

¶ 3 In 1992, when the Booker and Hotter subdivisions were under common ownership, the owner of the properties at the time recorded a sixty-foot-wide access easement in favor of the Booker subdivision, as the dominant estate, over a swath of land on the

1

Hotter subdivision, as the servient estate. We will refer to this as the access easement. The plan was to build a joint driveway on the easement. But due to terrain and grade constraints, a portion of the driveway was constructed outside of the recorded easement, further encroaching on the Hotter subdivision. This created a segment of the access easement that didn't have a driveway (the not used segment) and a segment outside of the access easement that had a driveway (the actually used segment). Construction of this driveway was completed sometime in the 1990s.

¶ 4    A separate utility easement exists within the not used segment of the access easement. This utility easement belongs to La Plata Electric Association, Inc. (LPEA), as the dominant estate, with the Hotter subdivision as the servient estate. The purpose of the utility easement is to construct, operate, maintain, and replace utility lines on the land. The utility lines within the utility easement are owned and managed by LPEA — *not* the plaintiffs.

¶ 5    After conflicts between the parties over the use of the access easement — and the actually used segment — the Trust filed this quiet title action. The lawsuit aimed to (1) clarify property rights with respect to the already established access easement and

2

(2) establish property rights through a new easement by estoppel with respect to the actually used segment.

¶ 6     After Rydz filed a motion to dismiss, the complaint was amended to include the Trust's trustee, Keller, as a plaintiff. Rydz later filed counterclaims asking the court to limit the usage of the access easement, to order the plaintiffs to move the entirety of the driveway into the parameters of the recorded access easement, and to order the plaintiffs to move the LPEA utility lines, among other things. In support of his requested relief, Rydz argued that (1) the plaintiffs improperly used their residential property for commercial purposes — using it as a short-term vacation rental (STVR) — in violation of a Booker subdivision restrictive covenant; and (2) the LPEA utility easement is too close to his house and should be relocated.

## A.     Pretrial Motions

¶ 7     Pretrial procedures were presided over by Judge Shropshire. Among the flurry of pretrial motions, the plaintiffs filed two motions for partial summary judgment.

¶ 8     In their first motion for partial summary judgment, the plaintiffs argued that Rydz didn't have standing to assert his STVR

counterclaim because the Hotter subdivision and Booker subdivision are subject to different covenants. The plaintiffs further argued that the use of the home as an STVR isn't an improper commercial use. Rydz filed a cross-motion for partial summary judgment, arguing that the trial court should rule, as a matter of law, that the use of the home as an STVR was barred by the Booker subdivision covenant because it was an improper commercial use.

¶ 9 In their second motion for partial summary judgment, the plaintiffs asked the trial court to rule that Rydz's LPEA utility easement argument failed to state a legally cognizable claim. The plaintiffs argued that because Rydz took title of the Hotter subdivision with actual and/or constructive knowledge of the utility easement, he is financially responsible for any request to move the utility easement. The plaintiffs further argued that any such request should be directed to the dominant estate of the utility easement (i.e., LPEA), not the plaintiffs.

¶ 10 Judge Shropshire granted both of the plaintiffs' motions for partial summary judgment. Thus, Rydz's counterclaims related to STVRs and the utility easement were dismissed and not to be considered at trial.

¶ 11    For the plaintiffs' motion for partial summary judgment on the STVR counterclaim, Judge Shropshire determined that because the two subdivisions had two separate controlling covenants, Rydz didn't have a legally protected interest — and thus he lacked standing to enforce the Booker subdivision covenant.  For the plaintiffs' motion for partial summary judgment concerning the utility easement counterclaim, Judge Shropshire determined that because the plaintiffs couldn't modify the placement of the easement, Rydz couldn't prevail on his utility easement counterclaim as a matter of law.

¶ 12    In addition to his cross-motion for summary judgment, Rydz also filed a motion for partial summary judgment regarding driveway routing, a motion for summary judgment in support of his counterclaims (global motion for summary judgment), and three motions in limine.  Judge Shropshire granted Rydz's motion for partial summary judgment regarding driveway routing.  Judge Shropshire denied Rydz's global motion for summary judgment, finding that it was duplicative of a few of Rydz's previous filings.

## B.     Attorney Fees

¶ 13     The plaintiffs requested attorney fees on several of Rydz's pretrial motions.  Judge Shropshire denied the plaintiffs' initial wave of requests for attorney fees, notwithstanding that the motions lacked merit, finding that Rydz filed the subject motions in good faith.  Despite denying attorney fees on these motions, Judge Shropshire warned Rydz that as a pro se litigant, he was still bound by the same rules as licensed attorneys.

¶ 14     Later, Judge Shropshire granted the plaintiffs' request for an award of attorney fees incurred in defending against five different motions filed by Rydz.  Judge Shropshire issued the award under section 13-17-102, C.R.S. 2025.  Section 13-17-102(6) allows an award of attorney fees against a pro se party where the court makes findings that the pro se party "clearly knew or reasonably should have known that the party's action or defense . . . was substantially frivolous, substantially groundless, or substantially vexatious."  Judge Shropshire also granted the plaintiffs' request for attorney fees incurred by the plaintiffs in preparing for the attorney fee hearing.  In granting this request, Judge Shropshire found that

despite being warned of his duty to abide by court rules, Rydz continued to file duplicative and groundless motions.

### C. Trial

¶ 15 Trial was set for a two-day court trial in June 2024. At the pretrial conference, Judge Shropshire advised the parties that a "visiting judge" would preside over the trial. In June 2024, Judge Walker presided over the two-day trial, which included a site visit to see the access easement.

¶ 16 Following trial, Judge Walker issued a written order setting forth his findings of fact and conclusions of law. In that order, Judge Walker found that an easement by estoppel existed for the plaintiffs' driveway on the actually used segment. Judge Walker also vacated the not used segment of the access easement in its entirety. Judge Walker's order didn't mention the utility easement. Judge Walker ordered the plaintiffs to submit a proposed order to record a description of the easements — including the easement by estoppel addition of the actually used segment and the vacatur of the not used segment.

## D.   Post-Trial

¶ 17    After trial, Judge Shropshire resumed presiding over the case, including addressing post-trial matters.

¶ 18    In line with Judge Walker's order, the plaintiffs submitted a motion for approval of a proposed order, along with the proposed order.  In their motion and proposed order, the plaintiffs requested to modify Judge Walker's order by changing the point where the driveway splits, moving where the address signs are placed, and moving Rydz's "no trespass" sign.  Rydz objected to the plaintiffs' motion and proposed order, arguing that it significantly changed the effect of Judge Walker's order.

¶ 19    Following briefing by the parties, Judge Shropshire issued two orders regarding the proposed order.  First, Judge Shropshire approved the plaintiffs' proposed order but included some amendments.  Judge Shropshire refused to change the point of the driveway split or move where the address signs were placed, noting that she wouldn't "issue an order contrary to express provisions of [Judge Walker's] order following trial."  Judge Shropshire didn't find a reference to the "no trespassing" sign in Judge Walker's order.  To "not conflict with a prior ruling," Judge Shropshire ordered the "no

trespassing" sign to be placed where Judge Walker ordered the address signs be placed.

¶ 20    Second, Judge Shropshire issued an order regarding the recording of the easement. The order reiterated that the actually used segment was now part of the access easement — thus establishing an easement by estoppel. The order further clarified that the vacated portion of the access easement — the not used segment — didn't vacate LPEA's utility easement located in that same area.

## II.    Analysis

¶ 21    On appeal, Rydz contends that (1) the trial court erred when it entered partial summary judgment in favor of the plaintiffs regarding the use of their property as an STVR; (2) Judge Shropshire didn't have authority to "overrule" Judge Walker, and, therefore, her order regarding the easements should be vacated; and (3) the award of attorney fees was improper. We reject all three contentions.

### A.    Partial Summary Judgment

¶ 22    Rydz contends that the trial court erroneously granted the plaintiffs' motion for partial summary judgment regarding the

plaintiffs' use of their property as an STVR. Because Rydz lacks standing to bring this claim, we disagree and conclude that the trial court's grant of partial summary judgment was proper.

### 1. Standard of Review and Applicable Law

¶ 23 We review a trial court's ruling on summary judgment de novo, "recognizing that summary judgment is appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *Beeftu v. Creekside Ventures LLC*, 37 P.3d 526, 528 (Colo. App. 2001).

¶ 24 "Standing is a jurisdictional prerequisite that can be raised at any time during the proceedings; if there is no standing, the court must dismiss the case." *People v. Shank*, 2018 CO 51, ¶ 9. There is a two-prong test for standing: Did the party suffer (1) an injury in fact (2) to a legally protected interest. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004). For a legally protected interest, the question is whether the party "has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Id.* at 856.

¶ 25 In order to have a legally protected interest from a covenant, the party "must be a resident of a subdivision to which a restrictive covenant applies in order to enforce the covenant against other

10

residents of that subdivision." *Conestoga Pines Homeowners' Ass'n v. Black*, 689 P.2d 1176, 1177 (Colo. App. 1984).

## 2. Application

¶ 26 On appeal, Rydz argues that he has standing to assert his claim because he "raised plentiful allegations of harm in his previous pleadings." This, however, only addresses the first prong of the test for standing. Rydz never argues that he has a legally protected interest under the Booker subdivision's restrictive covenant — the second prong of the test for standing.

¶ 27 Rydz brings his counterclaim, and subsequent request for summary judgment on the STVR issue, under a restrictive covenant of the Booker subdivision. Without being a resident of the Booker subdivision himself, Rydz can't enforce the Booker subdivision's restrictive covenant. Thus, he lacks a legally protected interest to bring a claim under the Booker subdivision's covenant, and therefore he lacks standing.

¶ 28 We conclude that because Rydz had no standing to bring a claim about STVRs in the Booker subdivision, the trial court didn't err by granting the plaintiffs' motion for summary judgment regarding STVRs.

11

¶ 29 Rydz next contends that Judge Shropshire — as the successor judge — didn't have authority to issue an order "overruling" Judge Walker's order following trial. Rydz argues that Judge Shropshire erroneously modified Judge Walker's order by changing a *completely* vacated section of the easement into a *partially* vacated section. We conclude that Rydz failed to preserve the general argument about the successor judge's authority, and thus we won't address that contention. As for his partially vacated easement argument, we disagree.

1. Preservation

¶ 30 While we don't require parties to use "talismanic language" to preserve issues on appeal, trial courts must be afforded an "adequate opportunity to make findings of fact and conclusions of law on any issue before we will review it." *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004). "To properly preserve an issue for appeal, a party's objection or request must be specific enough to (1) draw the court's attention to the asserted error; (2) provide the court with a meaningful opportunity to focus on the issue; and

12

(3) prevent or correct the error." *People v. Anderson,* 2020 COA 56, ¶ 11 (citations omitted).

¶ 31   Rydz contends that he preserved his argument that Judge Shropshire didn't have authority to overrule Judge Walker's order in his response to the plaintiffs' proposed order following trial. Rydz, however, never questioned Judge Shropshire's authority in this response.  To the contrary, Rydz asked Judge Shropshire to exercise her authority to reconsider certain portions of Judge Walker's order following trial.

¶ 32   Rydz doesn't identify — and we can't find — anywhere in the record where Rydz questioned Judge Shropshire's authority or otherwise raised the issue he advances on appeal.[1]  We conclude Rydz failed to preserve this argument, so we won't address it.

¶ 33   Beyond his general argument on appeal that Judge Shropshire didn't have authority, Rydz also argues that the utility easement

---

[1] Rydz's argument doesn't fall into an exception to the general rule of preservation either.  Challenges to subject matter jurisdiction can be raised for the first time on appeal. *Paine, Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 513 (Colo. 1986).  Rydz, however, didn't argue that Judge Shropshire lacked subject matter jurisdiction.  Indeed, such an argument would have been unavailing because "[c]ourts, not judges, are vested with jurisdiction." *People v. Jachnik,* 116 P.3d 1276, 1277 (Colo. App. 2005).

should have been vacated. Rydz did preserve this issue in the trial court, so we address it below.

## 2. Standard of Review

¶ 34    A successor judge's decision regarding post-trial motions for a trial they didn't preside over is reviewed under an abuse of discretion standard to determine if their actions were manifestly arbitrary, unreasonable, or unfair. *Craig v. Carlson*, 161 P.3d 648, 654 (Colo. 2007).

## 3. Application

¶ 35    Rydz contends that Judge Shropshire improperly "overturned" Judge Walker's order by creating another easement. Rydz's argument is based on a misunderstanding of the easements and to whom they belong.

¶ 36    As previously discussed, the not used segment contained two easements before the initiation of this lawsuit: (1) the plaintiffs' access easement and (2) LPEA's utility easement. Because Judge Shropshire granted the plaintiffs' motion for partial summary judgment regarding LPEA's utility easement, it wasn't to be considered at trial. Therefore, when Judge Walker vacated the not used portion of the *access* easement in its entirety in his order

following trial, he didn't mention the utility easement. Thus, Judge Walker's order didn't affect the utility easement.

¶ 37     Judge Shropshire's order approving the plaintiffs' proposed order didn't change any of this. In line with Judge Walker's order following trial, Judge Shropshire's order also vacated the not used segment of the access easement. Judge Shropshire's order further *clarified* that the utility easement within the not used segment remained in place. This was also in line with Judge Walker's order, even if it wasn't explicitly stated in Judge Walker's ruling.

¶ 38     Simply put, Judge Shropshire's order didn't overrule Judge Walker's order. Instead, her order pointed out that the utility easement — which wasn't being adjudicated by the court during trial — was still valid.

¶ 39     There's nothing in the record showing that Judge Shropshire did anything to modify or contravene Judge Walker's original order following trial. Accordingly, we conclude that Judge Shropshire's clarification on what portions of the not used segment were vacated and what portions remained intact wasn't manifestly arbitrary, unreasonable, or unfair, and thus wasn't an abuse of discretion.

## C. Trial Court's Award of Attorney Fees

¶ 40 Rydz next contends that the trial court erred in its award of attorney fees against him under section 13-17-102(2) and (6) for five motions. We disagree.

### 1. Additional Facts

¶ 41 Because the trial court awarded fees against a pro se party, our analysis begins with the warnings the trial court gave to Rydz about adherence to court rules. We then turn to the plaintiffs' various requests for attorney fees, Rydz's motions practice that led to attorney fees, the trial court's reasoning for the award, the plaintiffs' attorney fee affidavits, and Judge Shropshire's findings that Rydz clearly knew or reasonably should have known that his motions were substantially groundless — pursuant to section 13-17-102(6) — at the attorney fee hearing.

a. Notice of Duty to Adhere to Rules and Denials of Attorney Fees

¶ 42 Citing *Cornelius v. River Ridge Ranch Landowners Ass'n*, 202 P.3d 564, 572 (Colo. 2009), the trial court warned Rydz several times that even though he was a pro se party, he was "bound by the same rules of civil procedure as attorneys licensed to practice law." *Id.* (quoting *Negron v. Golder*, 111 P.3d 538, 540 (Colo. App. 2004)).

In many of their motions, the plaintiffs similarly argued that Rydz was bound by the rules of civil procedure and evidence despite being a pro se party. At least three of the trial court's warnings and one of the plaintiffs' admonitions occurred before Rydz filed his first motion for which the court awarded attorney fees.

¶ 43 As previously discussed, the plaintiffs requested attorney fees on several of Rydz's pretrial filings and in many of their own filings — including the complaint. Twelve of these requests came before Rydz filed his first motion for which the court awarded attorney fees. Twice the court denied fees for potentially groundless motions because it found that even though the motions lacked merit, they were filed in good faith.

b. Trial Court Findings in Support of Awarding Attorney Fees

¶ 44 Eventually, the trial court did award attorney fees to the plaintiffs in connection with five of Rydz's motions. These motions were: (1) Rydz's global motion for summary judgment; (2) Rydz's motion in limine regarding driveway grade; (3) Rydz's motion in limine to strike the plaintiffs' reply; (4) Rydz's motion in limine pertaining to witness testimony; and (5) Rydz's motion to

reconsider. Additionally, the trial court awarded the plaintiffs attorney fees incurred in preparation for the attorney fee hearing.

¶ 45 For the first two motions, the trial court found that these motions were duplicative of motions previously filed by Rydz. For the latter three motions, the trial court found that the arguments in these motions failed to meet the basic requirements of the rules of civil procedure or the rules of evidence. We will discuss each, in turn, below.

i. Duplicative Motions

(1) Global Motion for Summary Judgment

¶ 46 The trial court found Rydz's global motion for summary judgment to be a "general re-recitation" of his counterclaims and duplicative of two individual motions for partial summary judgment.

¶ 47 In his counterclaims, among other arguments, Rydz argued that (1) there was no evidence of when the driveway was built to support an implied easement; and (2) the plaintiffs' use of their property as an STVR is improper and overly burdens the access easement. Rydz subsequently filed two motions for partial summary judgment on these issues. In his September 26, 2023, motion for partial summary judgment concerning driveway routing,

18

Rydz asked the trial court to rule on the driveway evidence portion of his counterclaims. In his October 4, 2023, motion for partial summary judgment regarding STVRs, Rydz asked the trial court to rule on the STVR portion of his counterclaims.

¶ 48    On October 5, 2023, Rydz filed his global motion for summary judgment. Rydz argued that the plaintiffs' response to his counterclaims was procedurally deficient. He asked the trial court to strike the plaintiffs' response to his counterclaims and grant summary judgment on the entirety of his counterclaims.

¶ 49    The trial court ultimately denied Rydz's global motion for summary judgment, determining that Rydz had failed to meet his burden to establish that there was no issue of triable fact because his allegations were conclusory and without any legal or documentary support. In deciding to award attorney fees, the trial court noted, "While the [trial] [c]ourt has not awarded Plaintiff[s] the requested attorney fees for the motions it has so far ruled on, the [trial] [c]ourt finds this motion to be different than [those] separate motions for summary judgment." The trial court explained that the global motion was duplicative of Rydz's individual motions for partial summary judgment regarding the driveway and STVRs.

Finally, the order ended by reminding Rydz that despite being a pro se party, he must still follow the rules of civil procedure.

### (2) Motion in Limine Regarding Driveway Grade

¶ 50 On October 4, 2023, Rydz filed a motion requesting that the trial court preclude any evidence or argument about the grade of the driveway on the plaintiffs' land. On December 20, 2023, Rydz filed a motion in limine requesting to bar any evidence related to the grade of the driveway on the access easement.

¶ 51 The trial court ruled on these motions simultaneously, noting that they were essentially the same request. The trial court granted Rydz's motion to preclude the evidence of driveway grade. Notwithstanding its ruling, the trial court found it appropriate to award attorney fees on the motion in limine because it was duplicative of the already filed motion to preclude.

### ii. Motions That Failed to Meet the Basic Requirements of the Rules

### (1) "Motion in Limine" to Strike the Plaintiffs' Reply

¶ 52 Rydz filed yet another "motion in limine," this time requesting to strike the plaintiffs' reply in support of their own motion for partial summary judgment. Rydz argued that the reply was

"extremely lengthy" and thus the plaintiffs were "willfully wasting the [trial] [c]ourt's time." The plaintiffs' reply in question was ten pages without counting the case caption, signature block, and certificate of service.

¶ 53 The trial court found that Rydz's argument was meritless because the plaintiffs' reply conformed to the length requirements of C.R.C.P. 121, section 1-15, which limits reply briefs to ten pages, "not including the case caption, signature block, certificate of service and attachments." The trial court found that an award of attorney fees was appropriate because "a quick review of the guiding rules for motions practice would let the defendant know that [the] plaintiff[s'] reply was procedurally accurate."

(2) Motion in Limine Pertaining to Witness Testimony

¶ 54 Rydz's final motion in limine for which the court awarded attorney fees argued that several of the plaintiffs' witnesses should be barred from testifying at trial. First, he argued that a few lay witnesses should be barred from testifying at trial because he disagreed with their anticipated testimony, he questioned their motivation, and he believed they lacked credibility. Rydz also argued that the lay witnesses' testimony was either in conflict with

other evidence or already in the record through other documentary evidence disclosed by the plaintiffs. Rydz further argued that Keller's former attorney couldn't testify because of attorney-client privilege. Rydz didn't argue that any of the witnesses were incompetent to testify or that their testimony was irrelevant, pursuant to the Colorado Rules of Evidence.

¶ 55 The trial court denied Rydz's motion, finding that all the testimony was relevant and all the witnesses were competent pursuant to CRE 401, 601, and 602. The trial court addressed Rydz's arguments, noting that the credibility of the witnesses was for the trier of fact to decide, not Rydz. The trial court also noted that just because the plaintiffs disclosed evidence didn't mean that evidence was admitted. Finally, the trial court observed that the attorney-client privilege belonged to Keller, not Rydz, and thus Rydz couldn't use that as a basis to limit Keller's former attorney's testimony.

¶ 56 In awarding attorney fees on this motion, the trial court said,

> A quick review of the guiding rules of evidence
> regarding who is competent to testify . . .
> would have revealed that the witnesses
> referred in [Rydz's] motions are appropriate to
> testify. Further, disagreements with

statements made by witnesses or assertions of bias or bad motive are not proper grounds for exclusion. Therefore, pursuant to [the plaintiffs'] request, the [trial] [c]ourt will grant the request for attorney's fees.

(3) Motion to Reconsider

¶ 57    In Rydz's motion to reconsider, he argued that the trial court's finding that he didn't have standing to challenge the plaintiffs' use of their property as an STVR ignored the use of the access easement on his land by the STVR guests. Rydz didn't state the legal authority for bringing his motion to reconsider. In the motion to reconsider, Rydz simply reargued that the plaintiffs' use of their property as an STVR overburdens the access easement.

¶ 58    The trial court denied Rydz's motion to reconsider, finding it untimely and without merit. Despite Rydz's failure to state what his legal basis was for reconsideration, the trial court considered it under every rule that Rydz *could have possibly* brought the motion pursuant to. The court observed that if the motion was brought under C.R.C.P. 59 or C.R.C.P. 121, Rydz had fourteen days to file his motion to reconsider. Because Rydz filed his motion to reconsider well beyond the fourteen day deadline, the trial court

23

found that a motion to reconsider under C.R.C.P. 59 or C.R.C.P. 121 was untimely.

¶ 59 The court next noted that if the motion was brought under C.R.C.P. 60, although it would have been timely because Rydz filed the motion within the applicable six-month window permitted under Rule 60, it still wasn't a proper Rule 60 motion because Rydz wasn't seeking any relief permitted by Rule 60. The trial court explained the possible grounds for filing a motion to reconsider under Rule 60(b) were (1) mistake; (2) fraud; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged; or (5) any other reason justifying relief from the judgment. C.R.C.P. 60(b). The trial court found that Rydz didn't make any of these arguments in his motion to reconsider. Therefore, the trial court found that Rydz's motion wasn't proper under Rule 60.

¶ 60 Finding that the motion to reconsider was either untimely or improper (or both) under the rules, the trial court found that attorney fees were appropriate. The trial court again noted that Rydz was bound by the same rules of civil procedure as a licensed attorney and that he had been warned to familiarize himself with those rules.

### c. Attorney Fee Hearing

¶ 61     After the trial court awarded attorney fees, the plaintiffs filed two affidavits accounting for the attorney fees incurred while working on responses to the five motions. Upon Rydz's objection to the reasonableness of the requested attorney fees, the trial court ordered the parties to set a hearing on the matter, which was set on August 13, 2024. Ahead of the attorney fee hearing, the plaintiffs submitted a third affidavit requesting attorney fees incurred while preparing for the attorney fee hearing. The total amount of requested attorney fees was $25,980.[2]

¶ 62     The affidavits explained the attorneys' rates and how the work was distributed on each of the motions for which attorney fees were found appropriate. Attached to the affidavits were itemized invoices for the work completed on the motion responses for which attorney fees were awarded. Any item that wasn't related to the motion

---

[2] The plaintiffs' first attorney fee affidavit calculated $10,612.50 in attorney fees for work on Rydz's global motion for summary judgment and three motions in limine. The plaintiffs' second attorney fee affidavit calculated $7,392.50 in attorney fees for work on Rydz's motion to reconsider. The plaintiffs asserted they incurred $7,975 in attorney fees to prepare for the attorney fee hearing on August 13, 2024.

responses for which attorney fees were awarded was redacted with a black box.

¶ 63    At the outset of the August 13, 2024, hearing, the plaintiffs called three witnesses — Keller and both of the plaintiffs' attorneys. The attorneys testified about their billable rates, the amount of time spent on Rydz's motions, and the total amount of fees charged.  The attorneys also testified that despite Rydz not challenging the reasonableness of the fees, their rates, the time they spent on each motion, and the measures they took to lower the fees were reasonable.

¶ 64    Rydz acted as his own and sole witness.  Instead of testifying that the attorney fee rates were unreasonable, Rydz argued that the award of attorney fees was improper because Judge Walker denied any award of attorney fees following trial, Rydz didn't request the attorney fee hearing so he shouldn't be responsible for any fees relating to it, the plaintiffs are responsible for their own attorney fees under the American Rule, and fees were awarded against him without warning.

¶ 65    At the close of the hearing, the trial court made factual findings on Rydz's knowledge of the possibility of attorney fees being

awarded against him. The trial court first noted that Rydz was on notice of the possibility that fees would be awarded against him because the plaintiffs had requested attorney fees in almost every response to Rydz's motions. The trial court also noted that it had told Rydz that he was "entitled to look at the rules, get an attorney, all of the things that [he] could do." The trial court then found that despite repeatedly telling Rydz to review the applicable rules, Rydz still filed motions that didn't conform to those rules. Considering all the above, the trial court found that Rydz knew or reasonably should have known that the motions for which it awarded attorney fees were substantially groundless or failed to follow simple rules, stating as follows:

> [T]he [c]ourt finds that Mr. Rydz knew or should have reasonably known, and by that I mean letting Mr. Rydz know he's responsible for understanding the rules, including for instance the time lines for motions to reconsider and then receiving a motion to reconsider or receiving a trial brief, which is in essence a motion to reconsider, is I think support for the argument that he reasonably should have known.
>
> I feel like this [c]ourt, despite what Mr. Rydz says, this [c]ourt is for everyone, regardless of whether you have a law license or not, and the [c]ourt want[s] pro se litigants to succeed, and

27

by succeed I mean get their argument across to the [c]ourt so the [c]ourt can legitimately and substantively address the needs of that party. And everyone has room for improvement, but I feel like I have done my best to make sure that Mr. Rydz knew the procedure and his requirement to know the rules as such.

¶ 66 The trial court then found the attorney fee rate was reasonable — noting that Rydz didn't challenge the reasonableness of the rate. Assessing the reasonableness of the fees themselves, the trial court noted that it took substantial time to process and research Rydz's motions itself. Additionally, the trial court found that the requested fees only included work related to the specific motions. Accordingly, the trial court found the plaintiffs' request of $25,980 in attorney fees to be warranted and reasonable.

2. Standard of Review and Applicable Law

¶ 67 "Whether a statutory basis for attorney fees exists is a question of law that we review de novo." *CAW Equities, L.L.C. v. City of Greenwood Village,* 2018 COA 42M, ¶ 38. "We review an attorney fee award for an abuse of discretion and will not disturb that award unless it is patently erroneous or unsupported by the evidence." *Id.*

28

¶ 68     A trial court can award attorney fees against a party if it finds

that the party "lacked substantial justification" in bringing or

defending a civil action. § 13-17-102(2). There are, however,

limitations on that award when it is assessed against a pro se

litigant:

> A party who is appearing without an attorney
> or licensed legal paraprofessional shall not be
> assessed attorney fees or licensed legal
> paraprofessional fees unless the court finds
> that the party clearly knew or reasonably
> should have known that the party's action or
> defense, or any part of the action or defense,
> was substantially frivolous, substantially
> groundless, or substantially vexatious . . . .

§ 13-17-102(6).

¶ 69     Additionally, attorney fees incurred in resolving the fee issue

are recoverable. *Mau v. E.P.H. Corp.*, 638 P.2d 777, 781 (Colo.

1981).

¶ 70     The party seeking to recover attorney fees bears the burden of

proving the amount and reasonableness of the fees. *Klein v.

Tiburon Dev. LLC*, 2017 COA 109, ¶ 30. An affidavit from counsel

with supporting documentation — such as invoices — is generally

sufficient to support an award of attorney fees. *Weston v. T & T,

LLC*, 271 P.3d 552, 561 (Colo. App. 2011).

### 3. Application

¶ 71 Rydz doesn't challenge the reasonableness of attorney fees awarded by the trial court. Instead, Rydz argues that award was improper because (1) it was in violation of the American Rule regarding attorney fees; (2) the trial court's grounds for awarding attorney fees were insufficient; (3) the trial court failed to give him notice of the possibility of attorney fees; (4) the plaintiffs' attorney fees affidavits were insufficient; and (5) Judge Shropshire didn't have authority to award attorney fees. As we have addressed above, Rydz didn't preserve his argument that Judge Shropshire didn't have authority to make rulings, so we won't address this argument. We address his remaining arguments in turn.

### a. Statutory Basis

¶ 72 Rydz first contends that the award of attorney fees was in violation of the American Rule, arguing that the plaintiffs are responsible for their own attorney fees. Under the American Rule, "the parties in a lawsuit must bear their own legal expenses, *absent statutory authority*, a court rule, or an express contractual provision to the contrary." *Delluomo v. Cedarblade*, 2014 COA 43, ¶ 9 (emphasis added). And there is clear statutory authority, which the

court relied on, that allows an award of attorney fees — namely, section 13-17-102. Therefore, we reject the contention that the court's award of attorney fees violated the American Rule or any principle of Colorado law.

b. Grounds for Awarding Attorney Fees

¶ 73 Rydz next contends that the trial court had insufficient grounds to award attorney fees. In line with the statutory framework of section 13-17-102, the trial court made findings that Rydz's motions lacked substantial justification each time it awarded attorney fees against him. As detailed above, these findings are supported by the record.

¶ 74 First, Rydz did file duplicative motions. Rydz filed his global motion for summary judgment on the entirety of his counterclaims while his two motions for partial summary judgment on issues within his counterclaims were still pending. Similarly, his motion in limine regarding driveway grade made the same argument that was previously made in his pending motion to preclude evidence about the driveway grade.

¶ 75 Next, the remaining motions for which the court awarded attorney fees failed to follow the pertinent court rules. Rydz's

request to strike the plaintiffs' reply because the plaintiffs' reply was "extremely lengthy" was plainly inconsistent with C.R.C.P. 121, section 1-15(1)(a). Further, both his motion in limine pertaining to witness testimony and his motion to reconsider failed to make any arguments supported by rules of evidence or rules of civil procedure, respectively.

¶ 76 For the reasons stated above, we conclude that the trial court had sound support in the record for its findings that Rydz's five motions were substantially groundless and warranted attorney fees.

¶ 77 Finally, attorney fees incurred in "resolving the fee issue" are recoverable as attorney fees. *Mau*, 638 P.2d at 781. With that, the trial court had grounds to award the plaintiffs their attorney fees incurred in preparing for the attorney fee hearing.

¶ 78 In sum, because there is support for the trial court's findings, we won't disturb its award of attorney fees.

### c. Knew or Should Have Known and Notice

¶ 79 Rydz next contends that he had no notice that his motions were subject to attorney fees. In other words, Rydz argues that, as a pro se party, he didn't know or reasonably couldn't have known

that his actions lacked substantial justification — as is required by section 13-17-102(6). We disagree.

¶ 80 After finding that Rydz's motions lacked substantial justification, the trial court made the requisite findings that Rydz, as a pro se party, knew or reasonably should have known that his filings were groundless during the August 13, 2024, attorney fee hearing. These findings were supported by the record because both the plaintiffs and the trial court had repeatedly warned Rydz that he was bound by the same rules as licensed attorneys. Many of these warnings were issued well before Rydz filed the motions for which the court awarded attorney fees against him.

¶ 81 We conclude that because Rydz was repeatedly warned that he was bound by the same court rules as a licensed attorney, there was plenty of support on the record that he was on notice of the possibility of an attorney fee award against him as a pro se party. We further conclude that the trial court made the appropriate findings that Rydz either knew or reasonably should have known that his motions were substantially groundless. Thus, we decline to disturb the trial court's award of attorney fees on these grounds.

### d. Attorney Fee Affidavits

¶ 82   Finally, Rydz contends that the plaintiffs' attorney fee affidavits were insufficient, and thus any award based on them was erroneous. Specifically, he argues that the trial court didn't require appropriate discovery on the plaintiffs' attorney cost affidavits but instead accepted them at "face value." Rydz further argues that the invoices were insufficient because they were "almost totally blacked out" except for the totals. We disagree.

¶ 83   The plaintiffs' affidavits were adequate. These affidavits laid out the attorneys' rates, explained why those rates were reasonable, and were supported by invoices detailing the time each attorney or other professional spent on the specific motion for which the court awarded attorney fees. Using invoices as support is generally sufficient for an award of attorney fees. *Weston*, 271 P.3d at 561. As Rydz points out, much of the plaintiffs' supporting invoices is blacked out. These blacked out sections, however, were for legal work not related to the award of attorney fees and thus weren't relevant to the award of attorney fees.

¶ 84    Based on the facially sufficient affidavits and the evidence presented at the attorney fee hearing, we conclude that the record amply supports the trial court's award of attorney fees.

D.    Plaintiffs' Request for Attorney Fees on Appeal

¶ 85    The plaintiffs request an award of the attorney fees they incurred on appeal pursuant to C.A.R. 38, arguing that Rydz's arguments on appeal, which "conflict with explicit terms in the [d]istrict [c]ourt's orders and findings," and his failure to comply with the requirements of C.A.R. 28 render the appeal substantially frivolous.  While we reject Rydz's arguments on appeal on their merits and we recognize that his opening brief didn't strictly comply with the requirements of C.A.R. 28, we nevertheless conclude that an award of appellate attorney fees pursuant to C.A.R. 38 isn't warranted.  Accordingly, we deny the plaintiffs' request for an award of attorney fees incurred on appeal.

III.    Disposition

¶ 86    For the reasons set forth above, we affirm the trial court's judgment and orders awarding attorney fees.

JUDGE GOMEZ and JUDGE SULLIVAN concur.